DELAWARE ALCOHOLIC BEVERAGE CONTROL COMMISSION, Samuel R. Volzone and Lena Volzone, Appellants,

v.

ALFRED I. duPONT SCHOOL DISTRICT, by Gilbert S. Scarborough, Jr., Augustus W. Graham, Catherine S. Anderson, Donald R. Baer, Cedric E. Marsh, members of the Board of Education of Alfred I. DuPont School District, Franklin H. Burns, Luigi D'Andreamatto, Fletcher M. Condit, Irvin J. Ross, Mildred Kopcho, William L. Ross, William C. Medley, and Joseph C. Grear, Josephine Rosaio, William J. Watkins, Mary Gicker, James W. Stanley, Hanna Chandler, Pauline Nelms, (now Krebo), Appellees.

Supreme Court of Delaware.

Submitted Oct. 12, 1977.

Decided March 17, 1978.

Wheeler K. Neff, Deputy Atty. Gen., Wilmington, for appellant, Delaware Alcoholic Beverage Control Commission.

Harvey B. Rubenstein and Michael A. Poppiti, Wilmington, for appellants, Samuel and Lena Volzone.

William Poole and Daniel F. Wolcott, Jr., of Potter, Anderson & Corroon, Wilmington, and Thomas Herlihy, III, of Herlihy & Herlihy, Wilmington, for appellees.

Before HERRMANN, C. J., DUFFY and McNEILLY, JJ.

HERRMANN, Chief Justice (for the majority of the Court):

This is an appeal from a decision of the Superior Court reversing the Delaware Alcoholic Beverage Control Commission's (hereinafter the "Commission") issuance of a license to operate a package liquor store.

The application was for premises located on Naamans Road near Wilmington. The premises are within 400 feet of the entrance of Concord High School and within ½ mile of the Hide-Away Inn, a pre-existing taproom with both "on" and "off" premises licenses. Protests were filed by the A. I. duPont School District; the Concord High School PTA Chapter; the Retail Dealers Association of Delaware; and 115 residents of the neighborhood.

The hearing on the application was held in September, 1973, at which time evidence was presented for and against the license. The owners of the Hide-Away Inn made a formal appearance to protest the license. The evidence presented by the applicant consisted of the following: a petition of 86

signatures in favor of the license; testimony by the applicant and 3 nearby residents as to why the store was desirable; and a population chart of the area showing that, in the preceding 3 years, the voting population had doubled from 22,000 to 44,000, with an increase of only one liquor store. In addition to the opposition petition of 115 signatures, the protestors also offered testimony by the assistant principal of Concord High School that the liquor store would be a nuisance to the school.

The license was granted by the Commission in January of 1974, and the opponents of the license, the appellees herein, appealed to the Superior Court. The appeal was not finally heard on the merits until April of 1976, however, after a history of litigation from the Superior Court to this Court, back to the Commission, and again to the Superior Court on appeal from the Commission's confirmatory grant of the license. Upon the second appeal, the Commission requested that the Superior Court consider the sales and purchases of liquor by the licensee in the intervening 2 years as evidence of public need and convenience. The Superior Court held that it could not supplement the record with such evidence and reversed the issuance of the license by the Commission on four grounds: (1) that the record did not contain substantial evidence of a public need or convenience for a store in that location; (2) that the distance requirement of 4 *Del.C.* § 543(d), which prohibits licenses of the same type within a mile, was violated; (3) that the Commission erred in not placing the burden of proof upon the applicants to show that non-interference with a school [4 *Del.C.* § 543(c)] was met; and (4) that the Commission erred in not giving notice to the protesters of the consideration of additional evidence at a later meeting of the Commission and in permitting the deciding vote on the issuance of the license to be cast by a member who had not heard the additional evidence. The Commission and the applicants (hereinafter included within "Commission") appeal.

## I.

We agree with the Commission's contention that the record contained substantial evidence of a public need or convenience for a retail store in the area, and that the Superior Court erred in holding otherwise.

Section 541(c) provides that, upon appeal, the "Commission's findings of fact shall not be set aside unless the Court determines that the record contains no substantial evidence that would reasonably support the findings". Thus, the function of the Superior Court is to examine the record to determine whether or not the Commission's findings are based on substantial evidence. *Delaware Alcoholic Beverage Control Commission v. Allen,* Del. Supr., 227 A.2d 484 (1967). When a finding is based on substantial evidence, the Superior Court cannot substitute its judgment for that of the Commission even though it would have reached a different conclusion. *Stewart v. Delaware Liquor Commission,* Del.Gen.Sess., 45 Del.Super. 363, 74 A.2d 472 (1950).

Substantial evidence is evidence which affords a substantial basis of fact from which the fact in issue can be reasonably inferred and it must be enough to justify, if the trial were to a jury, a refusal to direct a verdict. *NLRB v. Columbian Enameling & Stamping Co.,* 306 U.S. 292, 300, 59 S.Ct. 501, 505, 83 L.Ed. 660 (1939). The evidence presented on behalf of the applicant meets the standard of substantial evidence. The testimony of three disinterested witnesses as to the need or convenience of the new store, the petition of 86 signatures supporting the store, and the voting population chart showing a rise in population from 22,000 to 44,000 in the years 1970–73, with only a concomitant increase of 1 liquor store, was sufficient evidence to reasonably support the Commission's finding of public need or convenience.

## II.

The Commission contends that the Superior Court erred in holding that the license was barred by 4 *Del.C.* § 543(d) since

there was an existing taproom, within a ½ mile, with both "on" and "off" premises licenses.

Section 543(d) reads:

"(d) The Commission shall refuse to grant a license for the sale of alcoholic liquor by any restaurant, tavern, taproom, hotel, store, or other establishment for consumption on or off the premises, when there is an *existing licensed establishment of the same type* within 1200 feet by accessible public road or street in any incorporated city or town, or within 1 mile by accessible public road or street in any unincorporated or rural area; provided, however, that if there is an existing licensed establishment less than 1 mile but more than nine tenths of 1 mile by accessible public road or street in any unincorporated or rural area, the Commission may, in its discretion, grant such license; * * *." (Emphasis supplied)

The central question is, therefore, the meaning of "existing licensed establishment of the same type". The Commission asserts that "same type" means same nature of business, such as store, tavern, taproom, restaurant, etc., while the protesters contend that it merely refers to the two basic types of licenses, "on" and "off" sales.

We hold that the Commission's interpretation is correct. Section 543(d) refers to "licensed establishment of the same type" and not to a "license of the same type"; clearly, therefore, the determining factor is the type of establishment. Only when an establishment of the same type as is already in existence is set forth in an application does § 543(d) bar the application. This conclusion is supported by the entire statutory scheme of Title 4 which clearly indicates that the Legislature intended to empower the Commission to grant various types of licenses.* To hold otherwise would prohibit the granting of a license to a package store in an area in which there were

nearby taprooms, but no package stores. The result would be to oblige all customers to frequent bars and taprooms in order to purchase wines or spirits for off-premises consumption. It is unreasonable to assume that such was the legislative intent.

Therefore, since the other existing license within the statutorily prohibited area was for a taproom, and not a retail package store, we conclude that the Superior Court erred in holding that the applicant was barred by § 543(d).

### III.

■■ The Commission contends that the Superior Court erred in holding that the applicant had a burden, under 4 *Del.C.* § 543(c), to show that the license would not interfere with the school.

§ 543(c) provides:

"(c) The Commission may refuse to grant a license to sell alcoholic liquor to any new establishment to be located in the vicinity of a church, school or college. The Commission may issue a license to any establishment located in the vicinity of a church, school or college when such establishment has been located in a place prior to the time any church, school or college may thereafter be located in the vicinity of such establishment."

We find nothing within this Section that places a burden upon the applicant to show noninterference with a school; the Section merely permits the Commission to consider the proximity of a school or church in reaching its decision. Accordingly, we must conclude that the Superior Court erred in imposing this burden of proof upon the applicant.

### IV.

We must also disagree with the Superior Court's conclusion that the Commission

---

* 4 *Del.C.* § 512 provides that the Commission may issue a license to any person in charge of a hotel, motel, restaurant, club, or multiple activity club. 4 *Del.C.* § 513 provides that a person in charge of a tavern may apply for a license. 4 *Del.C.* § 515 provides that a multiple activity club may apply for a club locker license. 4 *Del.C.* § 516 permits a person in charge of a hotel, restaurant, club or store to apply for a license to sell liquor by the bottle or half-bottle for consumption off the premises where sold.

erred in not giving notice to protesters of consideration of additional evidence.

It appears that while reviewing the evidence presented at the public hearing, the Commission queried whether the proposed widening of Naamans Road would involve condemnation of the land upon which the applicants' premises were situated. The application was tabled until receipt of a report thereon from the State Highway Department. The report, read at a later meeting, contained only the information that Naamans Road would be widened at some point in the future, and that it would involve both sides; the amount of land to be taken was unknown, however.

■■■ While under the general rule it is improper for an administrative agency to base a decision on information outside the record without notice to the parties, 2 Am. Jur.2d *Administrative Law* § 444, we do not find that the general rule was violated here. The information on Naamans Road was not additional evidence that had to be made known to the protesters; the report did not supply the Commission with any more information than it had before the request. In addition, assuming *arguendo* that the report was undisclosed evidence, there is no indication that the decision was based on this undisclosed evidence. And finally, use of the report was not fatal to the decision, as such evidence was merely incompetent, .and there is sufficient competent evidence to support the decision of the Commission. 2 Am.Jur.2d *Administrative Law* § 445, Anno. 18 A.L.R.2d 583, § 12 (1951); cf. *General Chemical Division, Etc. v. Fasano,* Del.Super., 47 Del.Super. 546, 94 A.2d 600 (1953).

■■■ Nor was there error by the Commission in allowing the deciding vote to be cast by a member who was not present when the Highway Department's report on Naamans Road was received. The prevailing view is that a deciding member of an agency need not be present when oral evidence is given as long as he reads the record. Davis *Administrative Law* § 11.02, Anno. 18 A.L.

R.2d 610, § 4 (1951), 2 Am.Jur.2d *Administrative Law* § 437. Thus, assuming *arguendo* that the report was evidence, it was not improper for the member to vote after having had an opportunity to read it.

### V.

In view of the foregoing, we do not reach the question of whether the record on appeal should have been supplemented with the monthly reports of sales and purchases of alcoholic liquor by the licensee.

\* \* \* \* \* \*

Reversed and remanded with instructions to affirm the Commission.

DUFFY, Justice (dissenting):

I regret that I cannot agree with the construction which a majority of the Court applies to 4 *Del.C.* § 543(d) and, respectfully, I must dissent from the ruling.

The statute provides in part as follows:

"The Commission shall refuse to grant a license for the sale of alcoholic liquor by any restaurant, tavern, taproom, hotel, store, or other establishment for consumption on or off the premises, when there is an existing licensed establishment of the same type within 1200 feet by accessible public road or street in any incorporated city or town, or within 1 mile by accessible public road or street in any unincorporated or rural area; provided, however, that if there is an existing licensed establishment less than 1 mile but more than nine tenths of 1 mile by accessible public road or street in any unincorporated or rural area, the Commission may, in its discretion, grant such license; . . . ."

By its terms, § 543(d) establishes a "distance limitation" test [1] and bars issuance of a license which would violate the stated criteria. Specifically, the Commission is prohibited from issuing a license for the sale of alcoholic liquors "by any . . . store, or other establishment for consumption on or off the premises, when there is

---

1. There are exceptions not pertinent to this appeal.

an existing licensed establishment of the same type" within one road mile. It is undisputed that, in this case, there is an establishment with an "on-off" license located only a half mile from the place where the Commission has decided to authorize operation of a new store for off-premises sale. If the "on-off" facility is an "existing" establishment "of the same type" as the new store, clearly the statute prohibits the Commission from issuing the new license. That is the critical question in the appeal and construction of the statute is required to answer it.

To begin, it seems to me that the word "establishment" in § 543(d) is of little aid in ascertaining meaning. The word is defined in generic terms in 4 *Del.C.* § 101(13),[2] the definition section, and appears to be a catchhall designed to cover any type of facility where alcoholic liquor is sold, on or off premises, not covered by the prior listing in § 543(d), i. e., a restaurant, tavern, taproom, hotel or store.

The key language in § 543(d) is, of course, the phrase "of the same type." This is to say that if there is an existing licensed tavern, for example, then another tavern may not be licensed within the mile distance. The Legislative purpose is plainly, I think, to prevent saturation of an area with the same kind of outlets and, to achieve, that goal, the General Assembly adopted the arbitrary distance test.

What, then, about an on-off license? In effect, this is a double license which permits the holder thereof to purchase and resell alcoholic liquor for consumption both on *and* off the premises where sold. See 4 *Del.C.* § 511. The dual nature of the license is emphasized by a provision in § 511 which states that,

"[i]f a licensee holds an on premises license and an off premises license, volun-

tary relinquishment of 1 of the said licenses and the retention of the other license shall be permitted automatically by the Commission."

I find nothing in the statute which makes any distinction between an "off-premises" license issued singly, and an "off-premises" license issued in combination with an "on-premises" license. There may, of course, be differences in the way in which license holders conduct their respective establishments. Thus, one licensee holding both on and off privileges may sell alcoholic liquor for consumption off premises from the same bar at which alcoholic liquor for on-premises consumption is sold; another licensee holding both on and off privileges may sell alcoholic liquor for consumption off premises from a separate retail-type of package store with a separate entrance. The choice is that of the licensee. But his choice cannot or, at least, should not control construction of § 543(d). Surely the statutory meaning of "existing licensed establishment of the same type" does not depend on how a specific licensee manages his operation.

If the Commission is not satisfied with the way in which the holder of a double license is serving the public who come to buy at the "store" (by selling to such customers only across a bar, for example), certainly the Commission has ample powers, 4 *Del. C.* § 561(b)(11), with which to adjust this situation—at the time of annual renewal of the license, for example. See 4 *Del.C.* § 552.

The construction given § 543(d) by the majority means that two establishments, each with a license to sell alcoholic beverage for off-premises consumption will be located within one-half mile of each other.[3] That, I believe, is prohibited by § 543(d).

\* \* \* \* \* \*

**2.** 4 *Del.C.* § 101(13) provides:

" 'Establishment' means any place where alcoholic liquor of one or more varieties is stored, sold or used by authority of any law of this State, including a hotel, restaurant, tavern or club as defined in this section, or where alcoholic liquor of one or more varie-

ties is manufactured by virtue of any law of this State."

**3.** The majority concludes its decision on this issue by saying that the "existing license within the statutorily prohibited area was a taproom, and not a retail package store." With all defer-

I would affirm the judgment of the Superior Court.

ence, I suggest that this is not correct. The very nature of the existing on-off license permits *both* taproom and retail package store sales.