**COLONIAL EDUCATION AS-SOCIATION, Defendant Below, Appellant,**

v.

**BOARD OF EDUCATION OF CO-LONIAL SCHOOL DISTRICT, Plaintiff Below, Appellee.**

No. 129, 1996.

Supreme Court of Delaware.

Submitted: Sept. 17, 1996.
Decided: Dec. 2, 1996.

Teresa C. Fariss (Argued), Young, Conaway, Stargatt & Taylor, Wilmington, for Appellant.

David H. Williams (Argued), and Paul Patrick Rooney, Morris, James, Hitchens & Williams, Wilmington, for Appellee.

Before VEASEY, C.J., HARTNETT and BERGER, JJ.

HARTNETT, Justice.

The Board of Education of the Colonial School District ("District"), after suspending a teacher for three days for conduct involving three minor students, declined to give the names of the students involved to the Colonial Educational Association ("Association"), the collective bargaining agent for the teacher. In response to a complaint filed by the Association, the Public Employment Relations Board ("Employment Relations Board") held that the District was guilty of an unfair labor practice in refusing to disclose the names and required it to disclose them without first consulting with the parents of the students. On appeal from the decision of the Employment Relations Board, the Court of Chancery held that an unfair labor practice had occurred but also held that the required disclosure of the names without prior consultation with the parents of the students was not an appropriate remedial order under 14 Del.C. § 4008(a). This appeal followed. We find no error in the Court of Chancery's holdings and therefore AFFIRM.

## I.

In January, 1995, the District suspended for three days, without pay, a music teacher employed by the District, "[f]or conduct that is considered to be insubordinate, unprofessional, and gives the appearance of sexual harassment directed toward female students." Three incidents of alleged misconduct provided the basis for this disciplinary action.

The first incident, in October, 1994, involved the hugging by the teacher of a female student and the kissing of her on top of her head and on her cheek. The second incident, in December, 1994, allegedly involved the kissing of a female seventh grader on the forehead by the teacher, accompanied by inappropriate comments. The third incident, also in December, 1994, involved the teacher being kissed by a female student as she exited a school bus. Faculty members observed the first and third incidents and the teacher has admitted them. Evidence supporting the second incident consists of statements by several students who witnessed the incident and the statement of the student who complained of the teacher's inappropriate comments. It is this evidence that primarily fuels the dispute before the Court.

After the teacher was informed of the District's decision to discipline him, he filed a grievance under the Association/District collective bargaining agreement. The agreement provides: "No employee shall be disciplined, reprimanded or reduced in pay except

for just cause."[1] In connection with the grievance proceeding the District refused to divulge the names of the complaining students or student witnesses. This led to the Association filing an unfair labor practice complaint with the Employment Relations Board created by the Public School Employment Relations Act. 14 Del.C. Ch. 40. The Act provides a procedure to address allegedly unfair labor practices in the public school system.[2] It has the stated purpose "to promote harmonious and cooperative relationships between public school districts and their employees and to protect the public by assuring the orderly and uninterrupted operations and functions of the public school system." 14 Del.C. § 4001.

The Association argued to the Employment Relations Board that the District's refusal to disclose the students' names interfered with its responsibility to properly evaluate and process the teacher's grievance and, therefore, constituted an unfair labor practice under 14 Del.C. § 4007(a)(1) and (a)(5).[3]

The Executive Director of the Employment Relations Board, the designated agent of the Board, considered the complaint and ruled that, although the Association's right to information was subject to a countervailing privacy interest, the student privacy interest did not outweigh the right of the Association to relevant information necessary to fulfill its duty of teacher representation. Consequently, the Executive Director held that the District had an unconditional duty to disclose to the Association the names of the students involved and that its failure to do so constituted an unfair labor practice.[4] The Executive Director's decision was affirmed by the full Employment Relations Board.

## II.

The matter was appealed to the Court of Chancery pursuant to 14 Del.C. § 4008 upon the stipulated facts and the only issues before it were issues of law. Accord-

---

1. Agreement Between Colonial School District and Colonial Education Association. September 1, 1993 through August 31, 1996, Section 11:3.

2. In *Seaford Bd. Of Educ. v. Seaford Educ. Ass'n,* Del.Ch., C.A. No. 9491, Allen, Ch. (Feb. 5, 1988), 1988 WL 8773, at *2, the Court of Chancery summarized the provisions of the Act:

First, it confers certain rights on employees to organize a collective bargaining unit and establishes procedures for creating and regulating such a unit. *See* §§ 4003, 4004. Second, it obligates boards of education and certified bargaining units to negotiate with each other (see §§ 4004(a), 4013) and prohibits strikes (§ 4016). Third, it establishes the Board (§ 4006), enumerates certain unfair labor practices (§ 4007), gives the Board enforcement powers (§§ 4008, 4009, 4014) and establishes a two-step mechanism for facilitating resolution of impasses in fulfilling the mandate to attempt to reach a voluntary collective bargaining agreement. (§§ 4014 and 4015). The first step in that process is mediation which may be voluntary, (§ 4014(a)), or mandatory, in the sense that it may, in limited circumstances, be compelled by the Board over the resistance of one party (§ 4014(b)). The second step in that process which is available if mediation fails to resolve the impasse, if factfinding (§ 4015) through which an impartial third party may hold hearings, and issue a recommendation "on unresolved contract issues" (§ 4015(e)(f)). The Board is then to hold a meeting with the parties to review such recommendation. If the impasse cannot then be voluntarily overcome, the Board is directed to "forthwith publicize the ... recommendations." No other enforcement mechanism, such as binding arbitration, is contemplated by the Act.

3. 14 Del.C. § 4007, *Unfair Labor Practices—Enumerated,* provides, in relevant part: (a) It is an unfair labor practice for a public school employer or its designated representative to do any of the following; (1) Interfere with, restrain or coerce any employee in or because of the exercise of any right guaranteed under this chapter; ...; (5) Refuse to bargain collectively in good faith with an employee representative which is the exclusive representative of employees in an appropriate bargaining unit.

4. 14 Del.C. § 4008, *Disposition of Complaints,* provides, in relevant part: (a) The Board is empowered and directed to prevent any unfair labor practice and to issue appropriate remedial orders. Whenever it is charged that anyone has engaged or is engaging in any unfair practice as described in § 4007(a) and (b) of this title, the Board or any designated agent thereof shall have authority to issue and cause to be served upon such party a complaint stating the specific unfair practice charge and including a notice of hearing containing the date and place of hearing before the Board or any designated agent thereof. Evidence shall be taken and filed with the Board.

ingly, the scope of review of this Court is *de novo.*[5]

### III.

 The Court of Chancery found that the actions of the District in refusing to disclose the names of the students without first consulting their parents constituted an unfair labor practice in violation of 14 Del.C. § 4007(a), but that the remedy imposed by the Employment Relations Board was excessive and not an appropriate remedial order under 14 Del.C. § 4008(a). The Court found that the students' parents had the right to be informed prior to the disclosure of the students' names and therefore the remedy ordered by the Employment Relations Board requiring the District to unconditionally disclose the students' names without giving the parents an opportunity to express their views was improper.[6] Although the Court of Chancery's remedy order could be clearer, we find from the opinion that its intent was to direct the District to seek the permission of the students' parents prior to divulging the names to the Association.[7] The order left unstated, however, what would occur if a parent objected to the disclosure of a student's name to the Association.

At oral argument before us the District conceded that it would have been more appropriate for it to have involved the parents in any decision relating to divulging the names of the children. Because we agree that the parents should have been consulted before the District unconditionally decided not to disclose the names, we agree that the District committed an unfair labor practice under 14 Del.C. § 4007(a).

### IV.

 We next review the remedy imposed by the Court of Chancery. Absent an error of law, this Court reviews a remedy imposed by the Court of Chancery for abuse of discretion.[8]

 An issue of first impression in this state is what role parents or guardians should play in determining the involvement of a minor student in a teacher disciplinary proceeding.[9] Both parties now agree that parents or guardians have the right to be advised before a student is interviewed or testifies in connection with a teacher disciplinary hearing. The parties differ, however, whether the parents or guardians have the right to prevent the disclosure of the name of a student to the Association.

We hold that the parents or guardians of a minor student have the right to voice an objection to the release of the student's name to the Association or to request limitations on any disclosure. Parental authority to make fundamental decisions for minor children is a recognized common law principle.[10] A parent or guardian who was not advised by the school of the intended release of the name of a student would be deprived of any input in an important decision relating to the student.

While the Court of Chancery's remedy gives the District the responsibility to seek the consent of the parents before the disclosure of the names and thereby gives it first knowledge of information crucial to the Association, an adverse party, the District has the duty to act in good faith when seeking permission for disclosure of students' names. There is no indication that the District will not act responsibly. Consequently, we hold

---

5. *Fiduciary Trust Co. v. Fiduciary Trust Co.,* Del. Supr., 445 A.2d 927, 930 (1982).

6. *Bd. Of Education of Colonial School District v. Colonial Education Association,* Del.Ch., No. 14383 (Feb. 28, 1996), Mem.Op. at 20, 1996 WL 104231.

7. The Court of Chancery directed the District within 30 days to "deliver to the Association a signed statement to either identify the parents of the children involved, with their permission, or stating what efforts were made without success to gain permission to disclose the parents' identity."

8. *Marra v. Stocker,* 532 Pa. 187, 615 A.2d 326 (1992); *See also, Handler Construction, Inc. v. CoreStates Bank, N.A.,* Del.Supr., 633 A.2d 356 (1993); *Rapid–American Corp. v. Harris,* Del. Supr., 603 A.2d 796 (1992).

9. For a discussion of the constitutional implication of not disclosing the name of a student victim see *Green v. Bd. of Sch. Com'rs of Indianapolis,* 716 F.2d 1191 (7th Cir.1983).

10. *Newmark v. Williams,* Del.Supr., 588 A.2d 1108, 1115 (1991).

that the Court of Chancery did not abuse its discretion in ordering the District to first consult with the parents before releasing the names of the students to the Association.

■ The issue of whether parents or guardians have the unconditional right to prevent the disclosure of a minor student's name was not ruled upon by the Court of Chancery and we cannot consider it.[11] It would also require us to engage in legal speculation and to render an impermissible advisory opinion.[12]

### V.

The Association also argues that certain portions of the Court of Chancery opinion should be vacated by us because that Court improperly expressed its views as to the conduct in which the teacher allegedly engaged.[13] The Association contends that if certain text is not vacated, it will be used by the District to prejudice the teacher's right to a decision by an impartial arbitrator in the grievance process agreed upon by the parties. Specifically, the Association argues that the Court of Chancery improperly observed that the teacher's alleged conduct was "gross unprofessionalism" and that the conduct (if true) "certainly constitutes just cause for the imposition of appropriate discipline". Additionally, the Association objects to the Court of Chancery's assumption of the truth of facts which are strongly contested. Because the challenged language is mere dictum and the District has agreed not to use any of the Court of Chancery opinion in the arbitration process, we decline to vacate the judgment below.[14]

### VI.

In summary, we agree with the Court of Chancery that the District committed an un-

fair labor practice under 14 Del.C. § 4007(a) by refusing to disclose the students' names without first consulting with the parents. We also conclude that the Court of Chancery did not abuse its discretion in requiring the District to first seek the permission of the parents before disclosing the students' names. We do not speculate as to the legal implications if parents or guardians object to the release of the names of students to the Association. Likewise, we express no opinion as to the dictum in the Court of Chancery opinion pertaining to the alleged misconduct of the teacher, but note that no part of the Court of Chancery opinion will be used in any future arbitration proceedings.

The decision of the Court of Chancery is, therefore,

**AFFIRMED.**

---

**11.** Supr.Ct.Rule 8.

**12.** *Stroud v. Milliken Enterprises, Inc.*, Del.Supr., 552 A.2d 476 (1989).

**13.** The Association objects to the Court of Chancery's statement that "If the matters set forth in Mr. Falgowski's letter are true, (and there appears to be no issue with respect to two of them) they certainly constitute just cause for the imposition of proportionate discipline." Mem. op. at 3. The Association claims that the Court of Chancery, at pages 3–5, improperly departed from the stipulation of facts that the Court re-

ceived from the proceedings before the Public Relations Board and assumed the truth of various statements in the memoranda and notes of the District's administrators whose truth is at the heart of the pending grievance. Finally, the Association contends that it was improper for the Court of Chancery to state, at pages 5–6 that, if the notes of the District administrators reflected true events, the events reflected constituted "gross unprofessionalism".

**14.** *Stearn v. Koch*, Del.Supr., 628 A.2d 44 (1993).