# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

|  |  |  |
|---|---|---|
| CITY OF WILMINGTON, | ) | |
| | ) | |
| Appellant-Below, | ) | C.A. No. 11873-VCMR |
| Appellant, | ) | |
| | ) | |
| | ) | CITATION ON APPEAL FROM |
| v. | ) | THE DECISION OF THE PUBLIC |
| | ) | EMPLOYMENT RELATIONS |
| FRATERNAL ORDER OF POLICE | ) | BOARD DATED DECEMBER 21, |
| LODGE 1, | ) | 2015 (BIA NO. 14-12-985) |
| | ) | |
| Appellee-Below, | ) | |
| Appellee. | ) | |
| | ) | |

## MEMORANDUM OPINION

Date Submitted: April 7, 2016
Date Decided: July 29, 2016

David H. Williams and James H. McMackin, III of MORRIS JAMES LLP, Wilmington, Delaware; *Attorneys for Appellant.*

Jeffrey M. Weiner of LAW OFFICES OF JEFFREY M. WEINER, P.A., Wilmington, Delaware; *Attorney for Appellee.*

**MONTGOMERY-REEVES, Vice Chancellor.**

This action is an appeal filed under 19 *Del. C.* § 1609 by Appellant, the City of Wilmington (the "City"), from a decision by the Public Employment Relations Board ("PERB" or the "Board") affirming the decision of a binding interest arbitrator (the "Arbitrator") in the parties' collective bargaining negotiations.[1] Pursuant to the Police Officers' and Firefighters' Employment Relations Act ("POFERA"), the City and Appellee, the Fraternal Order of Police, Lodge 1 ("Lodge 1"), submitted their last, best, final offers (each, an "offer") to the Arbitrator. After a hearing on May 19 and 21, 2015 (the "Hearing"), the Arbitrator issued a decision choosing Lodge 1's offer for implementation in its entirety on October 11, 2015 (the "Decision"). The City appealed the Decision to the Board, which affirmed. The City then appealed to this Court, and the parties agreed to stay implementation of the Decision pending resolution of this appeal on its merits.

Seven statutory factors guide the Arbitrator's determination of which offer to choose. One of those factors requires the Arbitrator to compare the costs and benefits of the parties' offers to those enjoyed by other police officers doing similar work in a comparable community. This appeal arises primarily from the Arbitrator's choice of a comparable bargaining unit, which he supported by taking judicial notice of his personal knowledge of proposed communities without giving

---

[1] *See* Police Officers' and Firefighters' Employment Relations Act ("POFERA"), 19 *Del. C.* §§ 1601-1618.

1

the parties notice and a chance to be heard. As a result, at least two of the seven statutory factors appear to have been decided in favor of Lodge 1 based on the arbitrator's improper selection of a comparable bargaining unit. Because it is unclear whether the Arbitrator's ultimate selection of an offer would have differed absent his error, the Board and the Arbitrator are reversed. This matter is remanded for further proceedings consistent with this opinion.

## I. BACKGROUND[2]

### A. Parties

The City is a public employer within the meaning of Section 1602(p).[3]

Lodge 1, an employee organization within the meaning of Section 1602(g),[4] was certified in June 1969 to represent a bargaining unit of "[a]ll City of Wilmington Police Officers below the rank of Captain." Lodge 1 is the exclusive bargaining representative of the R&F ("Rank and File") members of the Wilmington Police Department ("WPD"), which employs 310 police officers from the rank of Patrol Officer through Senior Lieutenant, within the meaning of Section 1602(h).[5]

---

[2] Unless otherwise noted, the facts recited herein are taken from the record below and the earlier decisions in this dispute of the Arbitrator and the Board.

[3] 19 *Del. C.* § 1602(p).

[4] *Id.* § 1602(g).

[5] *Id.* § 1602(h).

## B.    Facts

On May 3, 2011, Lodge 1 and the City executed a collective bargaining agreement for the term of July 1, 2010 to June 30, 2011.  In January 2012, Lodge 1 advised the City of its intent to negotiate changes to the then-existing agreement.  Between February 3, 2012 and January 31, 2014, the parties met on eight occasions and exchanged offers in a good-faith effort to negotiate a new agreement.[6]  On April 3, 2014, Lodge 1 filed its Request for Mediation, and one mediation session took place on July 15, 2014.[7]  On December 3, 2014, Lodge 1 petitioned the Board for binding interest arbitration pursuant to Section 1615.

By letter dated December 11, 2014, the Board's Executive Director directed the parties to submit their last, best, final offers by January 9, 2015, which the parties did on that date.  The Board certified the parties' collective bargaining impasse to binding interest arbitration on February 10, 2015 and later appointed Ralph H. Colflesh, Esq. to serve as the Arbitrator.

---

[6]    *See generally id.* § 1613 (requiring collective bargaining between the parties).

[7]    *See generally id.* § 1614 (permitting the parties to submit to mediation voluntarily).

### 1. The Decision

An impasse in collective bargaining that the Board advances to arbitration is resolved through the application of seven statutory factors.[8] In the Decision, the

---

[8] *Id.* § 1615(d). The seven statutory factors to be considered are as follows:

(1) The interests and welfare of the public.

(2) Comparison of the wages, salaries, benefits, hours and conditions of employment of the employees involved in the binding interest arbitration proceedings with the wages, salaries, benefits, hours and conditions of employment of other employees performing the same or similar services or requiring similar skills under similar working conditions in the same community and in comparable communities and with other employees generally in the same community and in comparable communities.

(3) The overall compensation presently received by the employees inclusive of direct wages, salary, vacations, holidays, excused leaves, insurance and pensions, medical and hospitalization benefits, the continuity and stability of employment, and all other benefits received.

(4) Stipulations of the parties.

(5) The lawful authority of the public employer.

(6) The financial ability of the public employer, based on existing revenues, to meet the costs of any proposed settlements; provided that any enhancement to such financial ability derived from savings experienced by such public employer as a result of a strike shall not be considered by the binding interest arbitrator.

(7) Such other factors not confined to the foregoing which are normally or traditionally taken into consideration in the determination of wages, hours and conditions of employment through voluntary collective bargaining, mediation, binding

4

Arbitrator first identified Sections 1615(d)(4), (5), and (6) as factors not at issue, which the parties do not dispute.[9] The Arbitrator then considered the remaining statutory factors in numerical order, concluding that Section 1615(d)(1) favored neither party and Sections 1615(d)(2), (3), and (7) favored Lodge 1.

The Arbitrator found that, with respect to Section 1615(d)(2) and (3), the parties produced ample evidence.[10] Primarily, Michael Nadol, Director of Public Financial Management, Inc., led a team that performed a compensation analysis of the R&F unit and several state and regional law enforcement agencies. Nadol and his team prepared a detailed report dated May 2015 (the "Nadol Report"), and Nadol testified at the Hearing.[11] Through the Nadol Report, the City produced evidence of the social and economic conditions of several communities. For example, with respect to Wilmington, Dover, and New Castle County, Delaware,

---

interest arbitration or otherwise between parties, in the public service or in private employment.

*Id.*

[9] With respect to Section 1615(d)(4), the parties stipulated that FOP Lodge 1's offer cost $3,566,030 and the City's offer cost $1,788,305, a difference of $1,777,725 in favor of the City's offer. Trans. Aff. of David H. Williams ("Williams Aff.") Ex. A ("Decision") at 18. Further, the City conceded under Section 1615(d)(6) that it had the financial ability to fund FOP Lodge 1's offer. *Id.* at 19. The Arbitrator also noted that Section 1615(d)(5) was not at issue. *Id.*

[10] Decision at 20.

[11] Williams Aff. Ex. C ("Nadol Report"); Williams Aff. Ex. H, at 117-198.

Reading, Pennsylvania, and Vineland, New Jersey, among others, the Nadol Report provided the following data: population (2013), population growth (2010-2013), number of sworn officers (2013), unemployment rate (2014 annual), median household income (2013), per capita income (2013), median home value (2013), median monthly owner costs (2013), and Moody's credit rating (2015). A chart, attached to this opinion as Appendix A (the "Comparables Chart"), collects those statistics along with the variance, calculated by the Court, of each statistic with respect to Wilmington.[12]

With respect to Section 1615(d)(2), the Arbitrator chose "the New Castle County Police . . . to be the closest comparators to [Lodge 1's] Rank and File ("R&F") bargaining unit in the record."[13] In rejecting communities outside Delaware, the Arbitrator stated as follows:

> In any event, there are never perfect comparators, and the NCCP[D] is far more comparable than the out-of-state agencies such as the Exeter Township, Pennsylvania, Reading, Pennsylvania, or Vineland, New Jersey police departments offered by the City. Having worked as a

---

[12] *See* Nadol Report at 22, 41, 54; App. A ("Comparables Chart"). The Nadol Report also included data, excluded from the Comparables Chart, on communities like Chester, Exeter, Lower Marion, and Philadelphia, Pennsylvania; the State of Delaware and Newark, Delaware; and Millville, New Jersey. At this stage, the parties do not appear to dispute whether these excluded communities are comparable. Moreover, the Court chose the communities in the Comparables Chart as examples of potentially comparable communities.

[13] Decision at 20.

6

labor lawyer in all of those municipalities and as an arbitrator in Reading several times, I take arbitral notice that those communities are entirely unlike Wilmington. Exeter is little more than a Reading suburb. Vineland is a large city geographically in the middle of what is a rural southern New Jersey whose economy still largely revolves around agriculture. Reading is a former industrial city with none of Wilmington's banking, commercial, medical, maritime or governmental entities, other than a regional office of Santander Bank. In fact, it no more resembles Wilmington than Wilmington resembles Baltimore.[14]

The Arbitrator explained that the New Castle County Police Department ("NCCPD" or the "County Police Department") is the closest comparator because the Wilmington Police Department and the County Police Department have roughly the same number of officers, their officers are "sworn in as members of each others' department, the proximity of the two departments and the fact that police work is not significantly differentiated between cities and their close-in neighbors . . . ."[15] The Arbitrator also dismissed facts suggesting that the New Castle County and Wilmington communities are not comparable, explaining as follows:

The fact that the County is better off financially than the City—with a higher per capita and median household income, greater median home value and a slightly better Moody's rating—does not affect the work that police

---

[14]    *Id.* at 20-21.

[15]    *Id.* at 20.

have to perform. The fact of the matter is that police work in contiguous communities, other than those with dramatically difference [sic] demographics, presents generally the same challenges.[16]

Finding that "the evidence, taken as a whole, when applied to the criteria found at 19 *Del. C.* 1615(d)(1)-(7) leads to a determination that [Lodge 1's offer] should be accepted in its entirety," the Arbitrator concluded that Lodge 1's offer "better meets the joints [sic] needs of the officers and the public" and entered an award accordingly.[17]

### 2. The Board's affirmation

On October 19, 2015, the City filed its Request for Review with the Board. At a hearing on November 18, 2015, the City argued, among other things, that the Arbitrator erred in considering the County Police Department as the only bargaining unit comparable to the Wilmington Police Department. The Board rejected the City's argument and affirmed the Decision on December 21, 2015.[18] The Board explained its reasoning as follows:

> The record establishes that the Wilmington police and New Castle County police are now cross-sworn and may be expected, at times, to perform their respective duties in either jurisdiction. It is difficult to imagine more

---

[16] *Id.*

[17] *Id.* at 25.

[18] Williams Aff. Ex. B ("Appeal").

8

direct comparability. The arbitrator acknowledged that New Castle County is larger and more affluent than the City (which lies within the County), but noted in the recent binding interest arbitration proceeding between these parties involving the bargaining unit of WPD Captains and Inspectors, the City agreed that New Castle County Police force was a useful comparator.[19]

### C.  Procedural History

On January 4, 2016, the City filed its Notice of Appeal, which asserted that the Board erred as a matter of law, erred as a matter of fact, acted in an arbitrary and capricious manner, and failed to support its affirmance with substantial evidence. On January 5, 2016, the City moved to stay implementation of the Decision. After full briefing, the Court heard argument on the City's appeal and the motion to stay on April 7, 2016. On April 15, 2016, the parties agreed to stay implementation of the Decision pending resolution of this appeal. This opinion constitutes the Court's ruling on the City's appeal from the Board's December 21, 2015 Decision.

### D.  Contentions

This appeal focuses on two issues: (1) whether the Board erred as a matter of law when it affirmed the Arbitrator's choice of a comparable bargaining unit based on information of which he purportedly took improper judicial notice, and (2) whether the Board erred as a matter of law when it affirmed the Arbitrator's

_____

[19]     Appeal at 4.

9

misapplication of one statutory factor and improper weighing of all seven factors in reaching his Decision.

Regarding the first issue, the City argues that the Arbitrator erred when he took judicial notice of evidence outside the record without notifying the parties and giving them an opportunity to be heard. The Arbitrator committed further error, the City contends, when he determined that the County Police Department is far more comparable to the Wilmington Police Department than it is to regional, urban police departments based on this improper judicial notice. Accordingly, the City argues, that the Board erred in affirming the Arbitrator's errors.

Lodge 1 responds that the Arbitrator's judicial notice was not improper because the Arbitrator (1) did not rely on the information to conclude that the County Police Department was the closest comparable to the Wilmington Police Department, (2) supported his conclusion with ample alternative evidence, and (3) did not take affirmative steps to acquire the outside information. Accordingly, Lodge 1 argues that, because the Arbitrator did not err as a matter of law, neither did the Board in affirming the Decision.

Regarding the second issue, the City asserts that the Arbitrator erred in applying Section 1615(d)(2) and in weighing all seven Section 1615(d) factors. The City contends that the Arbitrator misinterpreted or misapplied Section 1615(d)(2) by failing to consider whether Wilmington and New Castle

County are comparable communities as required by the statute. The City also avers that the Arbitrator weighed the seven statutory factors improperly by failing to give due weight to both the duration of its offer and the impact of limiting compensatory time absences on the public interest. Accordingly, the City contends, the Board erred in affirming the Arbitrator's errors.

In response, Lodge 1 argues that the Arbitrator interpreted and applied Section 1615(d)(2) correctly when he observed that the County Police Department and the Wilmington Police Department are cross-sworn and that case precedent supports finding they are comparables. Lodge 1 further avers that both the Arbitrator and the Board weighed the seven factors properly, but accorded little weight to those that the City raised and rejected the City's argument that its duration and compensatory time absences proposals justified selecting the City's offer over Lodge 1's.

## II.    ANALYSIS

### A.    Standard of Review

"On appeal of an administrative agency's adjudication, this Court's sole function is to determine whether the [agency's] decision is supported by substantial evidence and is free from legal error."[20] The Court is bound to accept as correct all

---

[20]    *Fraternal Order of Police, Lodge 5 v. New Castle Cty.*, 2014 WL 351009, at *4 (Del. Ch. Jan. 29, 2014) (quoting *Angstadt v. Red Clay Consol. Sch. Dist.*, 4 A.3d 382, 387 (Del. 2010)).

11

relevant factual findings that are supported in the record by "substantial evidence,"[21] which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[22] The parties agree that the issues presented on this appeal are purely legal and subject to the Court's *de novo* review.[23] "In undertaking such a review the Court accords due weight to PERB's expertise and specialized competence in labor law."[24] Nonetheless, the Court "remains obligated to conduct a plenary review of a PERB decision when the issue is the proper construction of statutory law and its application to undisputed facts."[25]

"Delaware courts do not accord agency interpretations of the statutes which they administer so-called *Chevron*[26] deference, as do federal courts in reviewing

---

[21] *See Bd. of Educ. of Colonial Sch. Dist. v. Colonial Educ. Ass'n*, 1996 WL 104231, at *4 (Del. Ch. Feb. 28, 1996), *aff'd*, 685 A.2d 361 (Del. 1996).

[22] *Breeding v. Contractors-One-Inc.*, 549 A.2d 1102, 1104 (Del. 1988).

[23] Appellant's Opening Br. 10 (citing *Fraternal Order of Police, Lodge 5*, 2014 WL 351009, at *4); Appellee's Answering Br. 16 (citing *Fraternal Order of Police No. 15 v. City of Dover*, 1999 WL 1204840, at *2 (Del. Ch. Dec. 10, 1999)).

[24] *See id.* (internal quotation marks omitted).

[25] *Id.*; *City of Wilm. v. Fraternal Order of Police, Lodge #1*, 2015 WL 4035616, at *9 (Del. Ch. June 30, 2015).

[26] *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council*, 467 U.S. 837 (1984) (holding that an agency's interpretation of a statute that it administers is entitled to deference so long as Congress has not spoken directly on that issue).

administrative decisions under the federal Administrative Procedures Act."[27]  In

interpreting a statute, Delaware courts must "ascertain and give effect to the intent

of the legislature."[28]  "If the statute is found to be clear and unambiguous, then the

plain meaning of the statutory language controls."[29]  "The fact that the parties

disagree about the meaning of the statute does not create ambiguity."[30]  "Rather, a

statute is ambiguous only if it 'is reasonably susceptible [to] different

interpretations,' or 'if a literal reading of the statute would lead to an unreasonable

or absurd result not contemplated by the legislature.'"[31]  If a statute is ambiguous,

the Court considers the statute as a whole, rather than in parts, reading each section

in light of all others to produce a harmonious whole.[32]  The Court should also

---

[27]  *Del. Comp. Rating Bureau, Inc. v. Ins. Comm'r*, 2009 WL 2366009, at *4 (Del. Ch. July 24, 2009).

[28]  *In re Adoption of Swanson*, 623 A.2d 1095, 1096 (Del. 1993).

[29]  *Ins. Comm'r v. Sun Life Assurance Co. of Can. (U.S.)*, 21 A.3d 15, 20 (Del. 2011).

[30]  *Chase Alexa, LLC v. Kent Cty. Levy Ct.*, 991 A.2d 1148, 1151 (Del. 2010).

[31]  *Fraternal Order of Police, Lodge 5*, 2014 WL 351009, at *4 (quoting *Centaur P'rs, IV v. Nat'l Intergroup, Inc.*, 582 A.2d 923, 927 (Del. 1990); *LeVan v. Indep. Mall, Inc.*, 940 A.2d 929, 933 (Del. 2007)).

[32]  *See, e.g.*, *Fraternal Order of Police, Lodge 5*, 2014 WL 351009, at *4 (citing *Taylor v. Diamond State Port Corp.*, 14 A.3d 536, 538 (Del. 2011)).

"[a]scribe a purpose to the General Assembly's use of statutory language, and avoid construing it as superfluous, if reasonably possible."[33]

## B.     Judicial Notice

The primary dispute in this matter concerns whether the Board committed an error of law when it affirmed the Arbitrator's choice of a comparable bargaining unit under Section 1615(d)(2) based on information of which he took judicial notice.[34] When choosing a comparable bargaining unit, the Arbitrator eliminated several alternatives from consideration by taking judicial notice of personal knowledge he gained working in those communities without providing the parties notice and an opportunity to be heard. As explained below, the Arbitrator erred as a matter of law when he based his choice of a comparable bargaining unit on improperly noticed information without providing the parties an opportunity to be heard, and the Board erred as a matter of law when it affirmed the Arbitrator. On this basis, the Board and the Arbitrator are reversed.

---

[33]     *Id.* (citing *Diamond State Port Corp.*, 14 A.3d at 538).

[34]     *See supra* note 8. This factor requires the Arbitrator to select a comparable bargaining unit that does comparable work in a comparable community. In addition, "[t]he statute does not require that the interest arbitrator consider more than one comparable in his analysis." *Fraternal Order of Police, Lodge No. 4 v. City of Newark*, 2003 WL 22256098, *3 (Del. Ch. Sept. 29, 2003).

### 1. Judicial notice was improper under the Delaware rules of evidence

Under Delaware Rule of Evidence 201, "[a] judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."[35] Although administrative agency hearings are less formal than courts of law, "it is improper for an administrative agency to base a decision on information outside the record without notice to the parties."[36] "Being quasi-judicial in nature, administrative agency hearings must adhere to the fundamental principles of justice, such as due process."[37]

Whether Wilmington is comparable to proposed communities geographically and economically not only is subject to reasonable dispute, but also was central to the parties' dispute in the Hearing. And, because the Arbitrator cites only his personal experience working as a labor lawyer or arbitrator in the communities he lists, it is dubious from the outset how the facts he takes notice of

---

[35] D.R.E. 201(b).

[36] *Turbitt v. Blue Hen Lines, Inc.*, 711 A.2d 1214, 1216 (Del. 1998) (citing *Del. Alcoholic Beverage Comm'n v. Alfred I. DuPont Sch. Dist.*, 385 A.2d 1123, 1127 (Del. 1978)).

[37] *State v. Pub. Empl. Relations Bd.*, 2011 WL 1205248, at *2 (Del. Super. Mar. 29, 2011).

are "generally known within the territorial jurisdiction." Moreover, many of his personal observations are not facially capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. In fact, the Arbitrator refers to no sources.

### 2.     No exception permits the Arbitrator's improper notice

Generally, basing a decision on information or evidence outside the record, without complying with D.R.E. 201, "constitutes a due process violation."[38] In limited situations, however, use of information or evidence acquired outside of an administrative hearing is not a violation of due process, including "where the information or evidence does not provide information an administrative agency already did not have; where there is no indication the administrative agency based its decision on this evidence; and where there is other sufficient competent evidence to support the administrative agency's decision."[39] Lodge 1 relies on the latter two exceptions in asserting that this Court should uphold the Board's affirmance of the Decision.

Lodge 1 argues that there is no indication the Arbitrator relied on the information. Specifically, Lodge 1 contends that the Arbitrator's statement

---

[38]     *Trader v. Caulk*, 1992 WL 148094, at *2 (Del. Super. June 10, 1992) (citing *Wilm. Vitamin & Cosmetic Corp. v. Tigue*, 183 A.2d 731, 736-37 n.6 (Del. Super. 1962)), *aff'd*, 648 A.2d 426 (Del. 1994) (TABLE).

[39]     *Id.* (citing *Del. Alcoholic Bev. Control Comm'n*, 385 A.2d at 1127).

16

regarding out-of-state communities was legally inconsequential because seven findings supported his decision that the County Police Department was the closest comparable to Lodge 1: (1) the County Police Department and Lodge 1 are cross-sworn; (2) the departments are close to each other and "police work is not significantly differentiated between cities and their close-in neighbors;" (3) the departments have about the same number of officers; (4) the "Delaware State Police is less comparable because it has more than twice as many officers" as Lodge 1 and is characterized more accurately as a highway patrol than a municipal force; (5) the County Police Department "is more comparable than out-of-state agencies located in [Pennsylvania] and [New Jersey], as those communities are unlike Wilmington geographically and economically;" (6) "Dover's population, size of police force, and per-capita income advantage make it less of a comparable;" and (7) "in a recent [binding interest arbitration] case involving the [Lodge 1's] Captains and Inspectors Unit, the City proposed and stipulated that [the County Police Department] was a useful comparable."[40]

Lodge 1's argument fails, however, because each additional finding that Lodge 1 lists either restates that the County Police Department and the Wilmington Police Department perform similar work or is not the "substantial evidence"

_____

[40]     Appellee's Answering Br. 18.

17

required to support the Arbitrator's conclusion that New Castle County and Wilmington are comparable communities. As described in the decisions and the briefs, the first and second findings listed above are substantively the same and both boil down to "police do similar work." Not only does the City concede that "[t]here is no basis for disputing that the services performed by police officers in most police departments, including the WPD and the NCCPD, is similar,"[41] but whether two bargaining units do similar work is a separate component of Section 1615(d)(2) than whether *the communities in which they work* are comparable. Accordingly, the first and second findings, as articulated in the papers, do not support Lodge 1's argument that the Arbitrator based his decision on other competent evidence.

With respect to the third, fourth, and sixth findings, Lodge 1 contends that the record contains facts supporting the Arbitrator's conclusion that Wilmington and New Castle County are comparable communities. After striking the improperly noticed information, however, the Arbitrator's conclusion is not supported by substantial evidence in this regard. For example, among New Castle County, Reading, Vineland, and Dover, the Comparables Chart shows that Vineland is most comparable to Wilmington in terms of population, population

---

[41] Appellant's Reply Br. 4.

growth, per capita income, and median home value, and Vineland is not least comparable in any category.[42] By contrast, New Castle County is most comparable to Wilmington only in terms of the number of sworn officers in their respective police departments.[43] The Comparables Chart also demonstrates that New Castle County is least comparable to Wilmington in terms of population, unemployment rate, and median household income.[44] Moreover, the Arbitrator himself emphasized "[t]he fact that the County is better off financially than the City—with a higher per capita and median household income, greater median home value and a slightly better Moody's rating . . . ."[45] Lodge 1 does not point to any other record evidence regarding the comparability of the New Castle County and Wilmington communities that would substantiate its argument or the Arbitrator's conclusion. That is, once the improperly noticed information is removed and the analysis is focused on comparable communities rather than similar work, the evidence provided to this Court reveals that the Arbitrator's conclusion that New Castle County is most comparable to Wilmington lacks substantial evidence.

---

[42]     *See* Comparables Chart.

[43]     *Id.*

[44]     *Id.*

[45]     Decision at 20.

Next, the fifth "finding"—that New Castle County is more comparable to Wilmington geographically and economically than communities in other states—is the result of the Arbitrator's improper notice. Lodge 1 does not cite competent evidence in the record supporting the Arbitrator's conclusion that out-of-state communities like Reading and Vineland are unlike Wilmington geographically and economically.

The seventh finding also fails to support the Arbitrator's conclusion. Lodge 1 argues, and the Arbitrator and the Board noted, that the Arbitrator's findings were consistent with precedent, but I read *Fraternal Order of Police, Lodge #1 and the City of Wilmington* ("*Captains & Inspectors*")[46] differently. There, Lodge 1 and the City stipulated, at the City's suggestion, that the appropriate comparisons to the Wilmington Police Department for Captains and Inspectors were the Delaware State Police and the County Police Department. Even if a party's stipulation in a prior, unrelated case were precedential (and Lodge 1 offers no reason to conclude that it is), the facts of *Captains & Inspectors* are materially different than those at issue here. There, the City was collectively bargaining with a different bargaining unit—the Captains and Inspectors of the Wilmington Police Department. Even if the parties in *Captains & Inspectors*

---

[46]    BIA 14-01-939 (Dec. 8, 2014).

stipulated to compare communities similar to those at issue here, they compared different groups doing different work. In addition, the parties stipulated to comparables in *Captains & Inspectors*, but contest them here. Accordingly, *Captains & Inspectors* is inapposite, and the Arbitrator and the Board erred as a matter of law to the extent they concluded the case justified choosing the County Police Department as a comparable.[47]

Lodge 1 also contends that *Fraternal Order of Police, Lodge No. 4 v. City of Newark*[48] supports the Arbitrator's conclusion. But, *City of Newark* supports neither Lodge 1's argument nor the Arbitrator's Decision. In *City of Newark*, Lodge 4, through its economist, compared the Newark Police Department's salary structure to those of the Delaware State Police, the County Police Department, and

---

[47]    Lodge 1 cites two additional cases in further support of its argument that the Arbitrator "relied upon an undisputed line of decisions over more than a decade" purportedly concluding that the City of Wilmington's comparables are the County Police Department and the Delaware State Police, not the police departments of Dover or Newark. (Appellee's Answering Br. 24-25.) These cases are not precedential for similar reasons. Specifically, the fact that the arbitrator in *Fraternal Order of Police, Lodge #15 and City of Dover* rejected Lodge 15's argument that the County Police Department and ninety state troopers assigned to Troop 3 were comparable to the City of Dover, (BIA 11-07-820 (Jan. 16, 2012)), is not related to whether the Arbitrator here properly considered the comparability of the Wilmington and Dover communities. Nor is it relevant that the arbitrator in *New Castle County and Fraternal Order of Police, Lodge #5*, (BIA 11-10-826 (Mar. 5, 2012)), "did not disagree" with Lodge 5's and New Castle County's usage of the Delaware State Police and the Wilmington Police Department as comparables. (Appellee's Answering Br. 26.)

[48]    2003 WL 22256098 (Del. Ch. Sept. 29, 2003).

the police employed by Wilmington and Dover.[49]  On appeal, the Board and this Court eventually found that only Dover was comparable to Newark.[50]  This Court subsequently held that the arbitrator's decision to use Dover as the only comparable community to Newark was supported by substantial evidence, which the Court noted typically includes "the population being served, the size of the police force, budget of the police department, and other geographic and demographic information."[51]  Specifically, the evidence considered included the number of sworn personnel, population served, area served (in square miles), police budget, "more serious" reported crimes in 2000, and "less serious" reported crimes in 2000.[52]  The Court was satisfied that Dover was Newark's only true comparable because the State Police, the County Police Department, and the

---

[49]     *Fraternal Order of Police, Lodge #4 and City of Newark*, BIA-02-01-338 (Jan. 7, 2002).

[50]     *City of Newark*, 2003 WL 22256098, at *3.

[51]     *Id.* (citing ELKOURI & ELKOURI, HOW ARBITRATION WORKS 1109 (5th ed. 1997) ("Determining which cities are 'comparable' for purposes of arbitrable resolution of a dispute between a city and its police officers has been made on the basis of the following factors: (1) proximity to a large city, (2) population, (3) size of the police force, and (4) size of the police department budget."); WILL AITCHISON, INTEREST ARBITRATION 32 (2d ed. 2000) (stating that "the resolution of the question of which jurisdictions are comparable will result in geographically, economically, and demographically similar employers being studied")).

[52]     *Id.*

Wilmington Police Department served in communities with vastly larger populations and much larger police forces.

This precedent is easily distinguishable. First, the demographics used from 2000 are no longer current. Second, and perhaps more importantly, because Newark had the smallest population, the smallest area, the smallest number of sworn personnel, and the smallest budget of the proposed comparables, Dover was literally the only comparable in every respect. Here, because Wilmington is neither the largest nor the smallest community considered, its comparable could be larger or smaller on a factor-by-factor basis. Just because Dover was Newark's only comparable a decade ago does not mean that neither Dover nor Newark is most comparable to Wilmington today on a factor-by-factor basis.

### 3. Case law supports this outcome

The City asserts that the Arbitrator's judicial notice in this case is the same error that the arbitrator committed in *State of Delaware, Office of Management and Budget v. Public Employment Relations Board* ("*OMB*").[53] There, the Superior Court reversed the arbitrator's decision because the arbitrator "based part of her decision on the information obtained from the State's website, which was outside the record."[54] Much like *OMB*, the Court determined above that the Arbitrator

---

[53]    2011 WL 1205248 (Del. Super. Mar. 29, 2011).

[54]    *Id.* at *3.

here based his selection of a comparable on information from outside the record. Lodge 1 attempts to distinguish *OMB* based on the standards of review and the Arbitrator's conduct. First, the standard of review in *OMB* was whether "errors of law . . . appear on the face of the record below."[55] Even under that more limited review, however, the Superior Court concluded that the arbitrator's improper judicial notice was an error of law. Thus, *OMB*'s standard of review does not change the case's applicability here. Second, according to Lodge 1, the arbitrator in *OMB* affirmatively collected evidence outside the record, whereas the Arbitrator here passively had the outside evidence in his head. Whether the Arbitrator affirmatively or passively took judicial notice of information outside the record, however, does not diminish the impropriety of doing so without providing the parties with notice or an opportunity to be heard. Instead, *OMB* supports the City's argument that taking judicial notice of and relying on information outside the record without giving the parties notice is an error of law.

As an alternative to *OMB*, Lodge 1 argues that the Arbitrator's statement at issue here is more akin to the one at issue in *Delaware Alcoholic Beverage Control Commission v. Alfred I. duPont School District*.[56] But Lodge 1 is mistaken. In *Delaware Alcoholic Beverage Control Commission*, the Delaware Supreme Court

---

[55]    *Id.* at *2.

[56]    385 A.2d at 1127.

concluded that (1) a report considered without notice to the parties did not provide new information, let alone evidence from outside the record; (2) even assuming the report contained undisclosed evidence, there was no indication that the Commission based its decision on that evidence; and (3) other competent evidence supported the Commission's decision.[57] Here, the Arbitrator relied on his personal knowledge of regional communities in choosing a comparable, and such a conclusion was not supported by substantial evidence. Thus, this case is unlike *Delaware Alcoholic Beverage Control Commission*.

In conclusion, the Arbitrator improperly took judicial notice of information outside the record without providing the parties notice and an opportunity to respond, and no recognized exception excuses this error. The Arbitrator's improper judicial notice constituted his only written analysis of whether the Wilmington and New Castle County communities are comparable. Thus, the Arbitrator committed a reversible error, as did the Board in affirming him.

Accordingly, the Court reverses and remands this appeal to the Board with instructions to remand the Decision to the Arbitrator for further proceedings consistent with this opinion.

---

[57] *Id.*

25

## C. Statutory Interpretation

Two issues remain. First, the City argues that the Board erred by affirming the Arbitrator's misapplication of the Section 1615(d)(2) factor, which requires the Arbitrator to choose a comparable bargaining unit that both does similar work and is located in a comparable community. Second, the City argues that the Arbitrator weighed the seven Section 1615(d) factors improperly by ignoring the duration and compensatory time absence components of its offer and that the Board erred in affirming the Arbitrator's error.

The Court concluded above that the Arbitrator and the Board committed errors of law when they chose the County Police Department as a comparable based on judicial notice taken without providing the parties notice and a chance to be heard. Here, however, the Court hesitates to apply Section 1615(d)(2) on its own in choosing which of the proposed comparables is most comparable to the Wilmington Police Department. The statute commits that task to the Arbitrator. Similarly, and for the additional reason that the Court cannot predict the Arbitrator's conclusion with respect to Section 1615(d)(2) on remand, the Court will not itself weigh the seven statutory factors.

## III. CONCLUSION

For the foregoing reasons, the Board's decision to affirm the Arbitrator's improper judicial notice is reversed and remanded to the Board with instructions to remand the Decision to the Arbitrator for further proceedings consistent with this opinion.

**IT IS SO ORDERED**.

| Factors | City of Wilm. | New Castle Cty. | | Reading, PA | | Vineland, NJ | | Dover, DE | |
|---|---|---|---|---|---|---|---|---|---|
| **Population (2013)** | 71,255 | 546,059 | 666.34% | 87,987 | 23.48% | 60,994 | -14.40% | 37,108 | -47.92% |
| **Population Growth (2010-13)** | 0.60% | 1.40% | 133.33% | -0.10% | -116.67% | 0.40% | -33.33% | 2.90% | 383.33% |
| **# Sworn Officers (2013)** | 317 | 353 | 11.36% | 164 | -48.26% | 139 | -56.15% | 93 | -70.66% |
| **Unemployment Rate (2014 Annual)** | 9.80% | 6.70% | -31.63% | 10.50% | 7.14% | 12.10% | 23.47% | 8.20% | -16.33% |
| **Median Household Income (2013)** | $39,343 | $63,755 | 62.05% | $25,507 | -35.17% | $47,750 | 21.37% | $44,135 | 12.18% |
| **Per Capita Income (2013)** | $24,742 | $32,199 | 30.14% | $13,097 | -47.07% | $23,986 | -3.06% | $20,992 | -15.16% |
| **Median Home Value (2013)** | $163,400 | $240,700 | 47.31% | $66,300 | -59.42% | $165,500 | 1.29% | $177,400 | 8.57% |
| **Median Monthly Owner Costs (2013)** | $1,159 | $1,342 | 15.79% | $750 | -35.29% | $1,290 | 11.30% | $1,244 | 7.33% |
| **Moody's Credit Rating (2015)** | Aa2 | Aaa | +2 | Baa1 | -5 | Aa3 | -1 | Aa2 | 0 |

[58]    For each factor, the variance of the most comparable community is shaded dark gray, the variance of the two moderately comparable communities are shaded light gray, and the variance of the least comparable is not shaded at all.