J.S. ALBERICI CONSTRUCTION COMPANY, INC., Defendant Below, Appellant,

v.

MID–WEST CONVEYOR COMPANY, INC., a/k/a Mid–West Conveyor International a/k/a Dearborn Mid–West Conveyor Co., and Chrysler Corporation, Defendants Below, Appellees.

No. 216, 1999.

Supreme Court of Delaware.

Submitted: Jan. 19, 2000.
Decided: Feb. 7, 2000.

William J. Cattie, III (argued), Barbara A. Fruehauf, Cattie and Fruehauf, Wilmington, Delaware, for Appellant.

Paul M. Lukoff, Sheldon K. Rennie (argued), Prickett, Jones, Elliott & Kristol, Wilmington, Delaware, for Appellees.

Before WALSH, HOLLAND, and HARTNETT, Justices.

WALSH, Justice:

This is an interlocutory appeal from a Superior Court ruling in a personal injury

action. The court held, *inter alia*, that a subcontractor/defendant has a duty to defend a contractor/co-defendant under an indemnification agreement for the contractor's own negligence. In so holding, the Superior Court rejected the subcontractor's contention that the agreement should be interpreted under Delaware rather than Kansas law.

We conclude that the Superior Court's decision to interpret the indemnification agreement under Kansas law was in error because that State's law permitting contractual indemnification for one's own negligence is clearly repugnant to the legislatively-defined public policy of Delaware. Accordingly, we reverse and remand this action for further proceedings.

## I

The Superior Court's ruling was made in the context of cross-motions for summary judgment in which the following facts were undisputed. The Chrysler Corporation ("Chrysler"), a Delaware corporation with its corporate headquarters in Michigan, began a refurbishing project at its assembly plant in Newark, Delaware in April 1994. In furtherance of this project, Chrysler hired Midwest Conveyor International, Inc., ("Midwest"), a Delaware corporation with its corporate headquarters in Kansas, as the general contractor. Midwest, in turn, hired several subcontractors, including J.S. Alberici Construction Company ("Alberici"), a company headquartered and incorporated in Missouri, to perform demolition and rehabilitation work at the plant.

All of the subcontracting companies were required to sign a subcontractual agreement containing the following indemnification provision:

> The SUBCONTRACTOR shall indemnify, hold harmless and defend MID-WEST and the OWNER, their respective employees, agents, servants, and representatives from and against any and all losses, damages, expenses, claims, suits and demands of whatever nature resulting from damages or injuries, including death, to any property or persons, caused by or arising out of any action, omission or operation under this Subcontract or in connection with the work attributable to the SUBCONTRACTOR, any of its subcontractors, any of its materialmen, any of their respective employees, agents, servants, and representatives, or any other person, including MID-WEST and the OWNER, their employees, agents, servants, and representatives, provided, however, that the SUBCONTRACTOR shall not be required to indemnify MID-WEST or the OWNER or their respective employees, agents, servants, and representatives hereunder for any damages or injuries, including death, to any property or persons caused solely and exclusively by the negligence of either MID-WEST or the OWNER or their respective employees, agents, servants and representatives.

The agreement also recited that it would be construed under the laws of the State of Kansas.

On July 10, 1994, Ronald Al–Uqdah, a worker involved in the refurbishment project,[1] was injured after falling through a metal plate which had not been securely fastened. Alberici was responsible for maintenance in the area where Al–Uqdah was injured. On July 10, 1996, Al–Uqdah and his wife filed a personal injury action in Superior Court naming Chrysler, Midwest, and Alberici as defendants.

On October 25, 1996, Midwest filed a cross-claim against Alberici for contribution and/or indemnification pursuant to the subcontract agreement. Soon after, both Midwest and Alberici filed cross-motions for summary judgment. In its motion, Alberici argued that the indemnification provision was contrary to the public policy

---

1. Al–Uqdah was an employee of Commercial Contracting Corporation which, although operating as a subcontractor, had a direct contract with Chrysler.

of Delaware law as expressed in 6 *Del.C.* § 2704(a) and, therefore, notwithstanding the language of the contract, Kansas law should not apply.

On April 20, 1999, the Superior Court issued an Opinion and Order denying both parties' motions for summary judgment based on its determination that the record reflects the existence of genuine issues of material facts concerning negligence and causation. The court ruled, however, that the indemnification provision is controlled by Kansas law and is enforceable. Thus, the court held that Alberici has a duty to defend Midwest and Chrysler under the terms of the subcontract agreement. We granted review of that interlocutory ruling.

## II [2]

█ Delaware courts will generally honor a contractually-designated choice of law provision so long as the jurisdiction selected bears some material relationship to the transaction. *Annan v. Wilmington Trust Co.*, Del.Supr., 559 A.2d 1289, 1293 (1989). Although the law of a foreign jurisdiction cannot be used to interpret a contract provision in a manner repugnant to the public policy of Delaware, *Travelers Indem. Co. v. Lake*, Del.Supr., 594 A.2d 38, 45 (1991), there is corollary policy in favor of recognizing and enforcing rights and duties validly created by a foreign law. *Skillman v. Conner*, Del.Super., 193 A. 563, 566 (1937). A mere difference between the laws of two states will not necessarily render the enforcement of a cause of action arising in one state contrary to the public policy of another. *Id.*

█ Alberici does not dispute that the indemnification provision would be enforceable under Kansas law. Alberici does contend, however, that the indemnification provision, to the extent it permits a party to contract away liability for its own negligence, is clearly repugnant to the public

policy of Delaware as set forth in 6 *Del.C.* § 2704(a) and, therefore, unenforceable. Section 2704(a) states in relevant part:

A covenant, promise, agreement or understanding in, or in connection with or collateral to, a contract or agreement ... relative to the construction, alteration, repair or maintenance of a road, highway, driveway, street, bridge or entrance or walkway of any type constructed thereon, and building, structure, appurtenance or appliance, including without limiting the generality of the foregoing, the moving, demolition and excavating connected therewith, purporting to indemnify or hold harmless the promisee or indemnitee or others, or their agents, servants and employees, for damages arising from liability for bodily injury or death to persons or damage to property caused partially or solely by, or resulting partially or solely from, or arising partially or solely out of the negligence of such promisee or indemnitee or others than the promisor or indemnitor, or its subcontractors, agents, servants or employees, *is against public policy and is void and unenforceable,* even where such covenant, promise, agreement or understanding is crystal clear and unambiguous in obligating the promisor or indemnitor to indemnify or hold harmless the promisee or indemnitee from liability resulting from such promisee's or indemnitee's own negligence.

(emphasis supplied)

Midwest responds that simply because there is a difference between Delaware and Kansas law with regard to the permissible scope of indemnification in the present context, does not mean there is a *per se* fundamental public policy at stake sufficient to prompt a Delaware court to refuse to enforce a contract valid under Kansas law. Rather, Midwest notes, the foreign

---

**2.** The Superior Court's holding implicates an issue of law and is subject to *de novo* review. *Colonial Educ. Assoc. v. Board of Educ. of*  *Colonial Sch. Dist.,* Del.Supr., 685 A.2d 361, 363–64 (1996).

law must be clearly repugnant to the public policy of Delaware or no state would ever apply a foreign state's law that was different from its own. Midwest argues that a foreign law is repugnant to the public policy of Delaware only if it violates some fundamental principle of justice, prevalent conception of morality or deep-rooted tradition of society. *See Loucks v. Standard Oil Co.,* N.Y.Ct.App., 224 N.Y. 99, 120 N.E. 198, 202 (1918); 16 Am.Jur.2d *Conflicts of Laws* § 25 (1998). The Kansas law that would otherwise enforce the indemnification provision, the argument runs, cannot be so described.

This case poses significant competing arguments in a choice of laws setting. On the one hand, there is the strong policy in favor of enforcing another state's laws. Conversely, section 2704(a) contains an explicit statement of public policy by the Delaware General Assembly that is difficult to ignore. Midwest argues that because the purpose motivating the legislature's statement of public policy is not specified, nor the evil sought to be remedied identified, this Court should not permit the contractually-selected law of another jurisdiction to be cast aside. We are of the view, however, that courts faced with a clear legislative statement of public policy should not attempt to parse that policy or speculate concerning the degree of egregious conduct sought to be prevented.

Although section 2704(a) does not indicate the specific purpose underlying the policy expressed, it does express in broad terms the "promisee," "indemnitee" and "others" as a class prohibited from contracting away liability for their own negligence. The present language of the statute is apparently a direct response to an earlier Superior Court decision which narrowly construed the statutory purpose. In *Wenke v. Amoco Chems. Corp.,* Del.Super., 290 A.2d 670, 673 (1972), the Superior Court construed the purpose of section 2704(a) to be as follows:

> The purpose of the statute is to prevent owners and their affiliated preconstruction professional people who furnish plans, designs and specifications from contracting away their duty to stand behind their product. There is no clear or specific reference in the statute to contractors or subcontractors engaged in the actual construction of buildings or to the services which they may render in repairing or renovating the same.

In 1988, however, section 2704(a) was broadened through an amendment by the Delaware General Assembly to include anyone in a subcontractor/contractor relationship in the construction context. 66 Del.Laws, c. 394, §§ 1-5. That is this case.

Section 2704(a) is clear on its face: a contractual provision requiring one party to indemnify another party for the second party's own negligence, whether sole or partial, "is against public policy and is void and unenforceable." Courts are not free to disregard that declaration of policy. Accordingly, we find this statutory language compels the conclusion that enforcing Kansas law on this issue would be clearly repugnant to the public policy of Delaware.

### III

For the foregoing reasons, we reverse the decision of the Superior Court and remand this action for further proceedings.