**VOLAIR CONTRACTORS, INC.,**
**Third Party Defendant**
**Below, Appellant,**

v.

**AmQUIP CORPORATION, Third Party**
**Plaintiff Below, Appellee.**

**No. 575,2002.**

Supreme Court of Delaware.

Submitted: May 6, 2003.
Decided: July 22, 2003.

---

49. D.R.E. 102.

50. *State Highway Dept. v. Buzzuto,* 264 A.2d 347, 351 (Del.1970).

Frank E. Noyes, II, Esquire, of White and Williams, LLP, Wilmington, Delaware, for Appellant.

George H. Seitz, III, Esquire, and Carrie I. Dayton, Esquire, of Seitz, van Ogtrop & Green, Wilmington, Delaware; Of Counsel: Francis Deasey, Esquire, and Michael L. Barbiero, Esquire (argued), of Deasey, Mahoney & Bender, Ltd., Philadelphia, Pennsylvania, for Appellee.

Before VEASEY, Chief Justice, HOLLAND and STEELE, Justices.

VEASEY, Chief Justice.

In this case we consider whether the application of the common law borrowed servant doctrine conflicts with a statute that declares void as against public policy contracts by which one party purports to indemnify the other for the latter's own negligence. We affirm the judgment of the Superior Court holding that the common law borrowed servant doctrine governs and is not barred by the statute declaring invalid as against public policy contracts indemnifying tortfeasors in connection with construction projects. Because the common law borrowed servant doctrine was the operative principle applied in this case, the statute was not implicated, and the common law doctrine was not invalidated.

### *Facts*

In June 1999 Pettinaro Construction Company became the general contractor for a project at a facility owned by Household International in New Castle. On June 9 Pettinaro entered into a sub-contractor agreement with appellant, Volair Contractors, Inc. Volair was to perform heating and air conditioning installation services for Pettinaro. Volair further entered into a rental contract with appellee, AmQuip Corporation. The contract stated that AmQuip was to provide Volair with a crane and operator to assist in installing the air conditioning units. Thereafter, AmQuip engaged an operator, Edward Gutierrez, through a local union hall.

On July 26, 1999, Gutierrez and the crane arrived at the construction site. Gutierrez met with two representatives of Volair who were in charge on the site, superintendent, Joseph Tigue, and foreman, Jack Lester. Tigue and Lester gave Gutierrez specific instructions, directions and procedures for performing the job. The two men told Gutierrez that Tigue was in charge on the ground and that Lester was in charge on the roof. Gutierrez would not be able to see onto the roof from his position in the crane, thus Lester was to be his "eyes, ears and controller of the lift once the unit was over the roof." Volair also had other crew members on the roof in charge of placing and installing the units. One of these members was Richard Breece.

During the course of the work, the crane received a flat tire. In order to change the tire, one-third of the counterweights on the crane were removed. One hour later the tire was replaced and installation of the units continued. It was then decided that the removed counterweights would not be added back on. There is some dispute about who made this decision.

Lester directed Gutierrez to continue with the third round of lifts. During the course of this lift, the crane experienced difficulties, and Gutierrez was required quickly to lower the unit to the roof. The problems with the crane were either caused by the ground below the crane supports giving way, lack of sufficient counterweights, or a combination of both.

At this point Lester decided it would be best to raise the air conditioning unit a few feet above the roof and slowly "walk" the unit toward the edge of the roof. Lester instructed the Volair crew to help walk the unit to the edge by guiding it. The walking of the unit in this manner was a normal procedure followed by Volair's employees to control such lifts.

While walking the lift Lester noticed Breece backing away from the area. Breece was not assisting in the walking of the unit but was on the roof. As Breece was backing away from the unit Lester yelled to him to watch where he was going.

Breece, however, fell through an uncovered hole in the roof and sustained injuries.

Breece filed suit against AmQuip, Gutierrez and Pettinaro. AmQuip demanded that Volair defend, indemnify, and hold AmQuip harmless in connection with the litigation. Volair did not respond. As a result, in December 2000 AmQuip filed a third party complaint against Volair seeking contractual indemnification based on the rental contract. The rental contract stated, in pertinent part, that Volair:

> [A]bsolutely and unconditionally warrants and *agrees to indemnify,* reimburse, save harmless and defend *AmQuip* Corporation, its subsidiaries, affiliates and their respective shareholders, directors, officers, *employees (loaned, borrowed, or otherwise ),* successors and assigns, of and *from any and all claims,* demands, liabilities, obligations, damages, costs and expenses, including without limitation counsel fees and costs, of all and every kind or character whatsoever without limitation, *which may arise under, by reason of or related to this agreement,* the rental, the handling, *moving or installing* of goods, *equipment or materials and/or any default in payment.*[1]

Pettinaro and AmQuip eventually settled with Breece, with AmQuip contributing $400,000. Volair refused to indemnify AmQuip for the amount. After various court proceedings between AmQuip and Volair, AmQuip filed a summary judgment motion.

At the hearing on the motion AmQuip contended that the contract alone was dispositive. In the alternative, AmQuip conceded that if the contract was not dispositive, the borrowed servant question would be one of fact. Volair contended that the contract ran afoul of the public policy set forth in Section 2704(a) of the Delaware Code.[2]

The Superior Court applied the common law borrowed servant provision. The court then decided that the jury must apply the doctrine to the facts because the issue of whether Gutierrez was a borrowed servant of Volair was an issue of material fact. The court denied the summary judgment motion and the issue went to trial. The jury found that Gutierrez was an employee of Volair at the time of the incident. Volair now appeals.

### Issues on Appeal

Volair contends that the trial court erred in two respects. First it argues that the court erred by applying the common law borrowed servant doctrine. Second, Volair asserts that the court erred by holding it liable for Gutierrez' negligence because the contractual indemnification was rendered void by Section 2704(a) as against public policy.

### The Statutory Public Policy

■ Volair contends the trial court erred by applying the common law borrowed servant doctrine. It asserts that the contract regarding indemnification was the operative principle and it was void and unenforceable pursuant to Section 2704(a). Thus, Volair argues, it could not be held liable by applying the common law doctrine. AmQuip argues that the trial court properly applied the common law doctrine. This Court reviews de novo the trial court's interpretation and application of legal precepts.[3]

---

1. Emphasis supplied.

2. DEL. CODE ANN. tit. 6, § 2704(a).

3. *Newtowne Village Service Corp. v. Newtowne Road Development Co., Inc.,* 772 A.2d 172, 174–75 (Del.2001).

Section 2704(a) relates to the public policy of certain contracts of purported indemnification and states in relevant part:

A covenant, promise, agreement or understanding in, or in connection with or collateral to, *a contract or agreement ... relative to* the *construction, alteration, repair or maintenance* of a road, highway, driveway, street, bridge or entrance or walkway of any type constructed thereon, and building structure, appurtenance or appliance, including without limiting the generality of the foregoing, the moving, demolition and excavating connected therewith, *purporting to indemnify or hold harmless the promisee or indemnitee* or others, or their agents, servants and employees, *for damages arising from liability* for bodily injury or death to persons or damage to property *caused partially or solely by,* or resulting partially or solely from, or arising partially or solely out of *the negligence of such promisee or indemnitee or others than the promisor* or indemnitor, or its subcontractors, agents, servants or employees, *is against public policy and is void and unenforceable,* even where such covenant, promise, agreement or understanding is crystal clear and unambiguous in obligating the promisor or indemnitor to indemnify or hold harmless the promisee or indemnitee from liability resulting from such promisee's or indemnitee's own negligence.[4]

The purpose of Section 2704(a) is to make clear that, "a contractual provision requiring one party to indemnify another party for the second party's own negligence, whether sole or partial, 'is against public policy and is void and unenforceable.' "[5] AmQuip contends here that the contractual provision does not render Volair liable by way of indemnification for the negligence of *AmQuip's* servant. Rather it was the negligence of *Volair's* borrowed servant, Gutierrez, that rendered Volair liable. Because Breece asserted a claim against AmQuip as a result of the negligence of Volair's borrowed servant, Gutierrez, Volair was contractually bound to indemnify AmQuip. But the public policy statute is not implicated because the indemnification is not for AmQuip's negligence.

### Common Law borrowed Servant Doctrine

■ The common law borrowed servant doctrine focuses on the relationship between an employer and an employee.

The general rule is that an employee, with his consent, may be loaned by his general employer to another to perform specific services, and that, in the course of and for the purpose of performing such services, he may become the employee of the specific employer rather than the employee of the general employer.... Accordingly, a loaned employee may become the specific employer's employee while at the same time remaining, generally speaking, the employee of him who loans his services.[6]

Therefore, under the common law, an employee (in this case Gutierrez) of one party (in this case AmQuip) can temporarily become the employee of another (in this case Volair) in the performance of certain services. So, if Gutierrez is found by the jury

---

**4.** DEL. CODE ANN. tit. 6, § 2704 (emphasis supplied).

**5.** *J.S. Alberici Construction Co., Inc. v. Mid-West Conveyor Co., Inc.,* 750 A.2d 518, 521 (Del.2000) quoting 6 *Del. C.* § 2704(a).

**6.** *Richardson v. John T. Hardy & Sons, Inc.,* 182 A.2d 901, 902 (Del.1962) citing RESTATEMENT (SECOND) OF AGENCY § 227.

to be the borrowed servant of Volair ("rather than the employee of his general employer," AmQuip), Volair could be liable for his negligence on a *respondeat superior* basis because, as the employer, it would have control over Gutierrez' activities.[7]

Volair contends that its contract with AmQuip is invalid because it violated Section 2704(a). AmQuip asserts that Section 2704(a) is irrelevant to the case, in light of the court's instruction to the jury on the common law borrowed servant doctrine and the jury's ruling. It contends that the court properly applied the common law borrowed servant doctrine.

The Superior Court, in ruling on AmQuip's motion for summary judgment, found that the central issue required a determination of the identity of Gutierrez' employer at the time of the incident. The Court found that the contract was not dispositive of this issue. Specifically the Court stated: .

[I] agree more with AmQuip's analysis of the lack of applicability of Section 2704. When that statute was enacted, I don't think it had the effect of repealing Delaware's common law doctrine, borrowed servant doctrine, which is pretty strongly entrenched in our case law. And I don't think the analysis of the borrowed servant doctrine in this case, if it were to result in Volair's being deemed the employer, would violate the concept that a party cannot be indemnified for his or its or her own negligence. I think that the borrowed servant doctrine is merely an independent analysis to be undertaken to determine in the first instance who was the employer at

the time of the negligent act. Was it the general employer, in this case, AmQuip? Or was it a specific employer, in this case, Volair?

\* \* \*

As I see it, the validity of the indemnification provision depends on whose employee Gutierrez was for whatever negligent act was involved. And I'm not quite clear what that is. And that just may be for a jury to determine.[8]

The Court's analysis is correct. We assume, without the need to decide the issue, that the contract would be void and unenforceable if it were applicable to indemnify AmQuip for the negligence of AmQuip's own employee. In that case, if AmQuip were the employer, it would arguably be passing on to Volair liability for AmQuip's negligence in violation of Section 2704(a). A jury determination, under the common law, however, that Volair was Gutierrez' employer at the time of the incident would not invalidate the contractual indemnification provision because the contract does not indemnify AmQuip for its own negligence. Rather, a common law borrowed servant determination would render Volair liable for the negligence of *its* borrowed servant, Gutierrez, for the specific acts for which he was borrowed.[9] Thus, the key to the case was for the jury to determine who was the employer of Gutierrez at the time of the accident.

To determine Gutierrez' employer at the time of the incident the Superior Court applied the borrowed servant doc-

---

7. *See id.* at 904 (finding that the test for determining liability of an employer is to determine who "had control over the activities of the employee").

8. Trial Transcript at 57–58.

9. *Richardson* indicates that had the injuries "resulted from the faulty or careless operation" of the crane, AmQuip might be liable as the general employer or, at the least, the issue would be submitted to the jury. *Richardson,* 182 A.2d at 903.

trine. By application of the borrowed servant doctrine, the trier of fact could determine whether Gutierrez was "acting in the business of and under the direction of" AmQuip, the general employer, or Volair, the specific employer.[10] This determination was a question of fact and could not be properly resolved through a summary judgment motion.[11] Thus, the trial court properly ruled that this factual determination must be left for the jury.

 Volair contends that the borrowed servant doctrine cannot coexist with Section 2704(a). We disagree. Section 2704(a) is intended to prevent one party from contracting away *its own* negligence to another party. The borrowed servant doctrine is not contrary to this principle. Rather, the borrowed servant doctrine is not an indemnification principle, but is used solely to determine the identity of the employer who was in control of the employee at the time of the negligent act. The identified employer would then be held liable for the negligence of its employee—in this case, Volair's borrowed employee, Gutierrez.

 In *Richardson* this Court held that, Whether or not a loaned employee becomes the employee of the one whose immediate purpose he serves is always a question of fact, and depends upon whether or not his relationship to the specific employer has the usual elements of the employer-employee status. Fundamentally, it is not important whether or not he remains the employee of the general employer as to matters generally. What is important to determine is, with respect to the alleged negligent act

in question, whether or not he was acting in the business of and under the direction of the general or the specific employer.[12]

In this case Gutierrez was taking direction from Volair's crew. He was under their control and was told by them what to do and how to do it. Given these circumstances it was reasonable for a jury to conclude that Volair was Gutierrez' employer at the time of the accident.

### Conclusion

Volair does not appear to dispute the jury's determination that it was Gutierrez' employer at the time of the accident, apparently resting its case on the application of the public policy statute. AmQuip argues that the jury's finding was proper and that the statute is not involved.

Because the jury could reasonably find Volair was Gutierrez' employer, under the borrowed servant doctrine, Section 2704(a) was not violated and Volair must indemnify AmQuip.

The judgment of the Superior Court is affirmed.

---

10. *Richardson*, 182 A.2d at 903.

11. *See id.* at 902–03 (finding that whether a loaned employee is the "employee of the one whose immediate purpose he serves is always a question of fact. . . .").

12. *Richardson*, 182 A.2d at 902–03 citing RESTATEMENT (SECOND) OF AGENCY § 227 cmt. a, 35 AM. JUR. *Master and Servant* § 541.