# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | |
|---|---|
| CHANGE CAPITAL PARTNERS FUND I, LLC, a Delaware limited liability company, <br><br>     Plaintiff/Amended Counterclaim Defendant, <br><br>     v. <br><br> VOLT ELECTRICAL SYSTEMS, LLC, a Texas limited liability company and PAUL J. BOUDREAUX, JR., <br><br>     Defendants/Amended Counterclaim Plaintiffs. | C.A. No. N17C-05-290 RRC |

Submitted: January 10, 2018
Decided: April 3, 2018

On Plaintiff's Motion to Dismiss Amended Counterclaim. **GRANTED.**

## <u>MEMORANDUM OPINION</u>

Kate Harmon, Esquire, Rafael X. Zahralddin, Esquire, and Shelley A. Kinsella, Esquire, Elliot Greenleaf, P.C., Wilmington, Delaware, Attorneys for Plaintiff/Amended Counterclaim Defendant Change Capital Partners Fund I, LLC.

Marc S. Casarino, Esquire, White and Williams LLP, Wilmington, Delaware, Attorney for Defendants/Amended Counterclaim Plaintiffs Volt Electrical Systems, LLC and Paul J. Boudreaux, Jr.

1

COOCH, R.J.

# I. INTRODUCTION

In this Motion by Change Capital Partners Fund I, LLC ("Plaintiff") to Dismiss Defendants' Amended Counterclaim, Plaintiff argues, pursuant to Superior Court Civil Rule 12(b)(6), that this Court should honor the parties' choice-of-law provision, which designates Delaware law, in their operative "Merchants Receivables Purchase and Security Agreement" contract. Defendant Volt Electrical Systems, LLC ("Volt") and Defendant Paul J. Boudreaux, Jr. ("Boudreaux" and, collectively with Volt, "Defendants") argue in response that Delaware law should not govern this transaction as to Counts I-IV of the Complaint because either New York or Texas would be the "default state(s)" for those counts in the absence of a choice-of-law clause in the contract, enforcement of the loan transaction under Delaware law would be contrary to fundamental principles of New York and Texas law, and New York and Texas have materially greater interests in the determination of this issue than does Delaware. Defendants acknowledge that Count V is governed by Delaware law.[1]

This Court finds, however, that Delaware law governs this transaction. Delaware courts are generally reluctant to subvert parties' agreed-upon choice-of-law provisions. This Court may in appropriate cases ignore a choice-of-law clause through the exception in *Restatement (Second) of Conflicts* § 187(2)(b), which allows parties to a contract to disregard the chosen state's governing law and apply the law of a state that would have applied absent the choice-of-law clause (the "default state") if the default state has a materially greater interest than the chosen state in the determination of the issue and application of the law of the chosen state would be contrary to a fundamental policy of the default state. The Court does not find that use of this exception is proper under these facts. Therefore, the Court will not disrupt the Delaware choice-of-law clause. The Court grants Plaintiff's Motion to Dismiss the Amended Counterclaim.

---

[1] Def.s' Resp. at 12-13 (citing *Papendick v. Robert Bosch GmbH*, 1981 Del. Super. LEXIS 675 (Del. Super. 1981)); Tr. of Oral Arg., November 20, 2017, at 26.

2

## II. PROCEDURAL HISTORY AND FACTS

The parties submitted at the Court's request a "Parties' Statement of Agreed Upon: (i) Procedural History; (ii) Facts; and (iii) Restated Contentions" (the "Agreed Statement") on January 9, 2018. The Agreed Statement follows below:

### PROCEDURAL HISTORY

[Plaintiff] filed the Complaint commencing the instant action on May 22, 2017. Defendants filed their Answer and Counterclaim (the "Counterclaim") on July 5, 2017. [Plaintiff] filed a *Motion on Behalf of Plaintiff Change Capital Partners Fund I, LLC to Dismiss Defendants' Counterclaim Pursuant to Del. Super. Ct. Civ. R. 12(b)(6)* on July 25, 2017 (the "Initial Motion to Dismiss"). Thereafter, Defendants sought leave to amend the original Counterclaim on August 2, 2017, which leave was granted by this Court on August 14, 2017. [Plaintiff] withdrew the Initial Motion to Dismiss on August 9, 2017 and Defendants filed the Amended Counterclaim on August 15, 2017. The Amended Counterclaim lodges five causes of action, four of which are predicated upon New York or Texas statutes: (i) N.Y. Penal Law § 190.40; (ii) N.Y. Gen. Bus. Law § 349; (iii) Tex. Fin. Code § 305.001(a) and § 304.001; (iv) Tex. Bus. & Com. Code § 17.44(a); and (v) negligence/negligent misrepresentation.

On August 29, 2017, [Plaintiff] filed its *Motion on Behalf of Plaintiff Change Capital Partners Fund I, LLC to Dismiss Defendants' Amended Counterclaim Pursuant to Del. Super. Ct. Civ. R. 12(b)(6)* (the "Motion to Dismiss"). *Defendants' Responsive Brief in Opposition to Plaintiff's Motion to Dismiss Amended Counterclaim* was filed on September 29, 2017. Thereafter, the *Reply in Support of Motion on Behalf of Plaintiff Change Capital Partners Fund I, LLC to Dismiss Defendants' Amended Counterclaim Pursuant to Del. Super. Ct. Civ. R. 12(b)(6)* (the "Reply") was filed by [Plaintiff] on October 13, 2017. A hearing was held on the Motion to Dismiss before the Court on November 20, 2017 (the "Hearing"). Both prior to and after the Hearing, [Plaintiff] approached the Defendants regarding the potential for resolving the matter via mediation, further settlement discussions or some other form of alternative dispute resolution. The parties could not reach agreement on any form of resolution. Consequently, the Parties are providing this Agreed Statement pursuant to the Court's instructions after the Hearing.

### FACTS

On October 4, 2016, Azadian Group, LLC ("Azadian"), Volt and Boudreaux entered into a *Merchant Receivables Purchase and Security Agreement* (the "Agreement").

3

The fully executed Agreement contains a choice of law provision designating Delaware law to apply to issues arising from the Agreement.

On April 18, 2017, Azadian assigned the Agreement to [Plaintiff] (the "Assignment"). Azadian and [Plaintiff] are both Delaware limited liability companies headquartered in New York. Volt is a Texas limited liability company located in Texas. Boudreaux is a Texas resident and the Managing Member of Volt. Volt and Boudreaux executed the Agreement in Texas.[2]

# III. THE PARTIES' CONTENTIONS

[The parties restated their contentions in the Agreed Statement:]

*A.* *Plaintiff's Contentions*

[Plaintiff] hereby incorporates its Motion to Dismiss and Reply as if fully set forth herein.

1.      Pursuant to the terms of the Agreement, Azadian agreed to purchase Volt's future receivables for a flat fee of $350,000.00, less fees and expenses, for a total payment of $338,000.00. Volt agreed to transfer $472,500.00 of purchased receivables to Azadian. Boudreaux personally guaranteed Volt's obligations under the Agreement. Azadian fully satisfied its obligations under the Agreement and paid Volt $338,000.00. Thereafter, Volt transferred a total of $248,590.00 in purchased receivables to Azadian. Volt's last transfer to Azadian was on April 12, 2017. Consequently, Defendants defaulted on their obligations under the Agreement, leaving $223,910.00 in purchased receivables not transferred to Azadian. The Agreement contains provisions allowing Azadian to recover attorneys' fees and interest in the event that the Defendants default.

2.      For purposes of a Motion to Dismiss, the Court must accept only well pled allegations as true; the Court need not accept conclusions of law averred in the Amended Counterclaim as true. Further, with regard to well-pled allegations, the test is whether Defendants may recover under any reasonably conceivable set of circumstances.

3.      Delaware law applies to this matter in its entirety. The Agreement contains a provision of law designating Delaware law as the law applicable to any dispute that arising from the Agreement. There is no dispute that Azadian fulfilled its obligations under the Agreement. The Defendants have defaulted under the terms of the Agreement in perhaps the most material and fundamental of their obligations to Azadian and, subsequently, [Plaintiff]. That Delaware law should

---

[2] Parties' Statement of Agreed Upon (i) Procedural History; (ii) Facts; and (iii) Restated Contentions, D.I. 38.

apply to Defendant' default under the Agreement is squarely within Azadian's and the Defendants' intent as enshrined at Section 19.1 of the Agreement. Delaware law applies because Azadian is a Delaware limited liability company and Azadian and the Defendants agreed to designate Delaware law as the applicable law for any disputes concerning the Agreement, which facts establish a material relationship between the Agreement and Delaware. The facts of this matter provide no exception to Delaware's long held, fundamental public policy in allowing parties freedom to contract.

4.     Because Delaware law applies, Counts 1 through IV of the Amended Counterclaim must be dismissed. Count V of the Amended Counterclaim must also be dismissed given the insufficient allegations to establish that [Plaintiff] is liable for Azadian's alleged conduct prior to the Agreement being executed. Defendants have failed to sufficiently allege that [Plaintiff] had knowledge of Defendants' existing claims against Azadian at the time the Agreement was assigned to [Plaintiff].

5.     To the extent that the Court determines that Delaware law does not apply, the Court must determine if New York and/or Texas law apply to this matter.

   a.     Counts I and II must be dismissed because the alleged conduct did not occur in New York and, consequently, the New York statutes upon which Defendants rely are not applicable.

   b.     Further, Count I must be dismissed because N.Y. Penal Law § 190.40 may not be used as a predicate for a cause of action by an entity, even if the cause of action is that which seeks a declaratory judgment, but only as an affirmative defense.

   c.     Count II must also be dismissed because the Defendants are not consumers for purposes of N.Y. Gen. Bus. Law § 349 and Defendants have not alleged any basis that would allow a factfinder to determine that Defendants are consumers. Defendants' averment in the Amended Counterclaim that they are consumers is not a well-pled factual allegation but is rather a conclusion of law that need not be accepted by the Court. The Agreement does not fall within the purview of N.Y. Gen. Bus. Law § 349 because it has no impact on New York's consumer public and it is not a consumer transaction; Defendants have not alleged any bases upon which a fact finder could find to the contrary.

   d.     Counts III and IV must be dismissed because Texas law does not apply to the Agreement.

   e.     Count IV must also be dismissed because Defendants have failed to allege any bases upon which they could be found to be "consumers" under Tex. Bus. & Com. Code § 17.44. Defendants' baseless averments regarding their status as consumers is a legal conclusion that need not be accepted by the

5

Court. Further, Defendants have failed to allege any basis upon which the fact finder could find that Azadian knew that the loaned funds were going to be used to purchase or lease goods or services as required by Texas law. As noted in the Motion to Dismiss, [Plaintiff] does not concede that the Agreement is a loan transaction but acknowledges that, for purposes of the Motion to Dismiss, the Court must accept all well-pled factual allegations in the Amended Counterclaim as true. Further, [Plaintiff] asserts that Defendants' averments pertaining to the nature of the Agreement are conclusions of law that need not be accepted by the Court, rather than well-pled factual allegations.

## B.    *Defendants' Contentions*

The Defendants incorporate their briefing on the Motion to Dismiss and their arguments as stated on the record at the Hearing, and this synopsis is not intended to limit, restrict, or waive any of the Defendants' positions.

1.    The transaction in dispute is a loan and not a purchase of future accounts receivables.

2.    The loan originated and was funded by Azadian (and [Plaintiff] via the Assignment) in New York.

3.    The Defendants were at all relevant times located in Texas.

4.    Delaware has no relationship to the parties or the subject transaction.

5.    The annualized interest rate charged by Azadian (and [Plaintiff] via the Assignment) is at least 102%.

6.    The loan transaction is usurious under New York and Texas law.

7.    New York and Texas have well-settled public policies against usurious loan transactions.

8.    New York and Texas law would apply but for a choice-of-law provision in the loan documentation referencing Delaware.

9.    Delaware law recognizes that promiscuous use of Delaware choice-of law provisions to circumvent another state law that would apply but for the choice of-law provision warrants disregard of the Delaware choice-of-law provision and application instead of the law of the other state(s).

10.    [Plaintiff] is wrong that the Defendants may not rely upon New York law. The Defendants are permitted under New York law to seek a declaration

6

that the criminally usurious nature of the loan transaction warrants cancellation of the transaction.

11.     [Plaintiff] is wrong that the Defendants may not rely upon New York law because they are not a consumer. The Defendants have pleaded that they are a consumer for purposes of New York law, and this is accepted for purposes of the Motion to Dismiss. Nevertheless, as evidenced by the information presented by the Defendants, New York law applies broadly to protect consumers **and** businesses that have been taken advantage of in usurious loan transactions.

12.     The Defendants may also recover under Texas law since they have been subjected to criminally usurious loan practices in both New York and Texas. [Plaintiff] is wrong that Texas law does not permit a claim unless there exists the conjunctive "contracting for <u>and</u> receiving" usurious interest, where the applicable Texas statute plainly allows for a claim in the disjunctive of "contracting for <u>or</u> receiving" usurious interest. In this instance, Azadian (and [Plaintiff] via the Assignment) has both contracted for and received usurious interest in violation of Texas law.

13.     The Defendants have pleaded that they are a consumer for purposes of Texas law, and this is accepted for purposes of the Motion to Dismiss. As such, [Plaintiff] is wrong to suggest that the Defendants' claims under Texas law should be dismissed for not being a consumer.

## IV. STANDARD OF REVIEW

Upon a motion to dismiss under Superior Court Rule 12(b)(6), the Court "(i) accepts all well-pleaded factual allegations as true, (ii) accepts even vague allegations as well-pleaded if they give the opposing party notice of the claim, (iii) draws all reasonable inferences in favor of the non-moving party, and (iv) only dismisses a case where the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances."[3] However, the Court will "ignore conclusory allegations that lack specific supporting factual allegations."[4]

## V. DISCUSSION

Delaware law applies to this matter because the parties entered into a choice-of-law provision, which designated Delaware as the applicable law for disputes

---

[3] *Turf Nation, Inc. v. UBU Sports, Inc.*, 2017 WL 4535970, at *5 (Del. Super. Ct. Oct. 11, 2017) (citing *Central Mortg. Co. v. Morgan Stanley Mortg. Capital Holdings LLC*, 227 A.3d 531, 536 (Del. 2011)).
[4] *Id.* (quoting *Ramunno v. Crawley*, 705 A.2d 1029, 1034 (Del. 1998)).

arising from the Agreement. Delaware courts are "strongly inclined" to respect the widely recognized and fundamental principle of freedom to contract.[5] This Court will not interfere unless "upon a strong showing that dishonoring the contract is required to vindicate a public policy interest even stronger than freedom of contract."[6] "[W]ith very limited exceptions, [Delaware] courts will enforce the contractual scheme that the parties have arrived at through their own self-ordering, both in recognition of a right to self-order and to promote certainty of obligations and benefits. Upholding freedom of contract is a fundamental policy of this State."[7]

Here, Defendants argue four causes of action in their Amended Counterclaim. Counts One and Two allege violations of New York laws[8] and Counts Three and Four allege violations of Texas law.[9] Defendants' argument that the public policy exception to the generally held Delaware rule that courts in this state will honor a choice-of-law clause is unavailing because the exception is inapplicable here. As such, Delaware law applies to the Agreement. Accordingly, Plaintiff's Motion to Dismiss Amended Counterclaim is granted because Defendants' Amended Counterclaim asserts the applicability of New York and Texas anti-usury statutes but where Delaware law was agreed by the parties to apply to the loan transaction. Also, Defendants' Count Five "Negligence and Negligent Misrepresentation" claim is dismissed because Defendants' claim only pertains to Azadian's conduct, not Plaintiff's.

### A.   Delaware Choice-of-Law and the Exception in Restatement (Second) of Conflicts § 187(2)(b)

"Delaware [c]ourts will honor a contractually-designed choice of law provision so long as the jurisdiction selected bears some material relationship to the transaction."[10] The existence of a choice-of-law clause establishes a material relationship between the chosen state and the transaction. "Title 6, section 2708(a)

---

[5] *Libeau v. Fox,* 880 A.2d 1049, 1056–57 (Del.Ch.2005), *aff'd in pertinent part,* 892 A.2d 1068, 2006 WL 196379 (Del. Jan. 24, 2006).

[6] *Id.* at 1056; *see also Maddock v. Greenville Retirement Community, L.P.,* 1997 WL 89094, at *7–8 (Del.Ch. Feb.26, 1997) ("Only a very strong showing that a contract term is a gross violation of the policies embodied in this common law rule [that reasonable restraints be upheld] would permit [plaintiff] to escape the economic bargain that he entered.") (citations omitted).

[7] *Ascension Ins. Holdings, LLC v. Underwood,* 2015 WL 356002, at *4 (Del. Ch. Jan. 28, 2015).

[8] Def.s' Am. Counterclaim at 11-13 (citing N.Y. Penal Law § 190.40 and N.Y. Gen. Bus. Law § 349).

[9] *Id.* at 13- 17 (citing Tex. Fin. Code §305.001(a), Tex. Fin. Code § 305.004(a), and Tex. Bus. & Comm. Code § 17.44 (a)).

[10] *Vichi v. Koninklijke Philips Elecs., N.V.,* 85 A.3d 725, 766 (Del. Ch. 2014) (quoting *J.S. Alberici Const. Co. v. Mid-W. Conveyor Co.,* 750 A.2d 518, 520 (Del. 2000)).

of the Delaware Code recognizes that a choice of law clause is a significant, material and reasonable relationship with this State and shall be enforced whether or not there are other relationships with this State."[11]

Where an agreement does not contain a choice-of-law provision, Delaware courts will apply the "most significant relationship" test of *Restatement (Second) of Conflicts* § 188.[12] However, where, as here, the contracting parties designate a state's laws to apply, the *Restatement (Second) of Conflicts* § 187 instructs:

> (2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either

---

[11] *1 Oak Private Equity Venture Capital Ltd. v. Twitter, Inc.*, 2015 WL 7776758, at *9 (Del. Super. Ct. Nov. 20, 2015) (internal quotation marks omitted).

[12] § 188 of the Restatement will apply in cases where the parties do not specific a choice of law:

> (1) The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in § 6.
> (2) In the absence of an effective choice of law by the parties (see § 187), the contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
> > (a) the place of contracting,
> > (b) the place of negotiation of the contract,
> > (c) the place of performance,
> > (d) the location of the subject matter of the contract, and
> > (e) the domicil, residence, nationality, place of incorporation and place of business of the parties.
>
> These contacts are to be evaluated according to their relative importance with respect to the particular issue.
> (3) If the place of negotiating the contract and the place of performance are in the same state, the local law of this state will usually be applied, except as otherwise provided in §§ 189- 199 and 203.

Restatement (Second) of Conflict of Laws § 188 (1971).

The Restatement (Second) Conflict of Laws §6(2) provides that the following seven factors are also relevant in conducting a choice of law inquiry:

> (a) the needs of the interstate and international systems,
> (b) the relevant policies of the forum,
> (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
> (d) the protection of justified expectations,
> (e) the basic policies underlying the particular field of law,
> (f) certainty, predictability and uniformity of result, and
> (g) ease in the determination and application of the law to be applied.

*Deuley v. DynCorp Int'l, Inc.*, 8 A.3d 1156, 1160–61 (Del. 2010).

(a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or

(b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.[13]

Delaware courts have recognized the exception in *Restatement (Second) of Conflicts* § 187(2)(b) stating, "the Restatement is generally supportive of choice-of-law provisions, but recognizes that allowing parties to circumvent state policy-based contractual prohibitions through the promiscuous use of such provisions would eliminate the right of the default state to have control over enforceability of contracts concerning its citizens."[14] "A mere difference between the laws of two states will not necessarily render the enforcement of a cause of action arising in one state contrary to the public policy of another."[15]

### B. The Restatement (Second) of Conflicts § 187(2)(b) Exception Does Not Apply.

Defendants argue that the § 187(2)(b) exception applies to the Agreement because "Delaware law clearly would not apply in the absence of the choice-of-law provision"[16] and "New York and Texas have strong public policies against usurious loan transactions . . . ."[17] Defendants rely heavily on *Ascension Ins. Holdings, LLC v. Underwood* to argue the applicability of the Restatement exception. *Ascension* held that:

> where the parties enter a contract which, absent a choice-of-law provision, would be governed by the law of a particular state (which I will call the "default state"), and the default state has a public policy under which a contractual provision would be limited or void, the Restatement recognizes that allowing the parties to contract

---

[13] Restatement (Second) of Conflict of Laws § 187 (1971)

[14] *Ascension*, 2015 WL 356002, at *2.

[15] *Vichi v. Koninklijke Philips Elecs. N.V.*, 62 A.3d 26, 45 (Del. Ch. 2012) (quoting *J.S. Alberici Const. Co.*, 750 A.2d at 520).

[16] Def.s' Resp. at 4. Notably, Defendants fail to declare whether New York or Texas would be the default state. Defendants only assert that absent a choice-of-law clause, the default state would not be Delaware.

[17] *Id.*

10

around that public policy would be an unwholesome exercise of freedom of contract.[18]

*Ascension* is distinguishable from the facts of this case. As a subsequent Court of Chancery case held: "[t]o take advantage of this Restatement-based exception, [defendant] would have to demonstrate both: (1) that enforcement of the Non–Competition Provisions would be contrary to California public policy—even assuming that California would be the state whose law would apply if not for the choice-of-law provisions; and (2) that California has a "materially greater interest" than Delaware in the enforcement or non-enforcement of the Non–Competition Provisions."[19]

Put simply, in order for Defendants to disregard the Agreement's choice-of-law clause designating Delaware, they must demonstrate that absent the choice-of-law provision, New York or Texas would be the "default state" whose law would apply, enforcement of the loan transaction under Delaware law would be contrary to a fundamental public policy of New York and/or Texas, and New York and/or Texas has a materially greater interest than Delaware in the enforcement or non-enforcement of the loan transaction. Defendant must make a showing of all of the above in order to invoke the *Restatement (Second) of Conflicts* § 187(2)(b) exception.[20]

Defendants fail to demonstrate that the *Restatement (Second) of Conflicts* § 187(2)(b) exception applies here. Defendants fail to sufficiently demonstrate each factor as is required under the Restatement. As such, this Court will not disrupt the long-recognized, fundamental principle in favor of a freedom of contract.

1.    <u>Defendants have failed to identify a "default state" whose law would apply absent the choice-of-law provision, which identifies Delaware.</u>

Defendants argue that without the choice-of-law clause in the Agreement, Delaware law would not apply. However, Defendants never identify an alternative

---

[18] 2015 WL 356002, at *2.

[19] *Kan-Di-Ki, LLC v. Suer*, 2015 WL 4503210, at *18 (Del. Ch. July 22, 2015).

[20] *Ascension*, 2015 WL 356002, at *3 (finding that "[i]f both these questions are answered in the affirmative, California law will apply notwithstanding the choice-of-law provision in the [contract].").

11

state's law that would apply. Defendants do not name a "default state."[21] Defendants appear to argue that because "Defendants are located in Texas"[22] and "Azadian is headquartered in New York City and the transaction was handled [in New York]"[23] either Texas or New York should be the default state. Defendants' argument here casts too wide a net.

Defendant relies on *Ascension*. However, the facts of *Ascension*—as well as the cases that follow it[24]—are distinguishable to those here. The Court of Chancery in *Ascension* applied the *Restatement (Second) of Conflicts* § 187(2)(b) exception to find that the contractually agreed Delaware choice of law should be ignored, and California law should be applied.[25] However, the case only involved two possible states whose laws could apply: Delaware or California. The default state was therefore obvious. Defendants here have not identified which, if either, state would be the default state. Defendants have failed to demonstrate that there is an alternative state like in *Ascension* that would apply absent the choice-of-law clause in the Agreement.

Furthermore, the contract at issue in *Ascension* was a non-compete clause in a "contract between a corporation doing business in California and an employee residing in California, entered into in California and to be performed predominantly in California—not in Delaware."[26] The contract "was negotiated in California and involved an agreement not to compete that was limited almost completely to areas within California, by virtue of the geographic scope of the Plaintiff's business."[27] It is axiomatic that, absent the Delaware choice of law, the state in which the non-compete clause was intended to apply would be the default state.

---

[21] This Court notes that Defendants asserted at oral argument that "Counts I and II are New York Law, and Counts III and IV are Texas law." Tr. of Oral Arg., November 20, 2017, at 27. Defendants also asserted that another potential "outcome is that Texas law applies to all counts or New York law applies to all counts or they're split in some fashion." *Id.* at 32. Defendants also seem to claim that identifying a "default state" at this juncture is premature because, as was stated at oral argument, "[w]e'll do discovery. [Counsel for Defendants] will be back before Your Honor in some other form or fashion in terms of a later motion to address what law should apply . . . and move forward from there." *Id.* at 32-33. This Court disagrees. Defendants must now identify a "default state" in order to complete the analysis and determine whether that default state has a "materially greater interest in the issue" than Delaware. *Ascension*, 2015 WL 356002, at *3. Defendants failed to do so.

[22] Def.s' Resp. at 1.

[23] *Id.* at 4.

[24] *See EBP Lifestyle Brands Holdings, Inc. v. Boulbain*, 2017 WL 3328363, at *7 (Del. Ch. Aug. 4, 2017); *Fyfe Co., LLC v. Structural Grp., Inc.*, 2016 WL 4662333, at *5 (D. Md. Sept. 7, 2016); *Kan-Di-Ki, LLC*, 2015 WL 4503210, at *17.

[25] *Ascension*, 2015 WL 356002, at *5.

[26] *Id.* at *5.

[27] *Id.* at *3 (footnote omitted).

12

Here, the Agreement was for a loan transaction. There is no state, by virtue of the loan itself, that would clearly apply. The loan was executed in New York, between a Delaware corporation with its principal place of business in New York and Texas corporation with its principal place of business in Texas and a Texas citizen. A loan is not akin to the non-compete clause in *Ascension* wherein the geographic scope of the non-compete necessarily invoked California.

*Ascension* and the three cases that have followed[28] all involve non-compete clauses and choice-of-law conflicts between the same two states: Delaware and California. *Ascension* is distinguishable to the facts here and Defendants' reliance on it is inapposite.

    2.    <u>Defendants have demonstrated that enforcement of the loan transaction would be contrary to New York and/or Texas public policy.</u>

Defendants cite authority to support their argument that usurious loans are contrary to Texas and New York public policy.[29] This Court agrees that these sources stand for the proposition that these two states have public policies against usurious loans. *Restatement (Second) of Conflicts* § 187(2)(b) requires a showing that "application of the law of the chosen state would be contrary to a fundamental policy of a state . . . ." Usurious loans are contrary to fundamental public policies of both New York and Texas. The Texas Finance Code, § 302.001 (b) states that "[a]ll contracts for usurious interest are contrary to public policy and subject to the appropriate penalty prescribed by Chapter 305." "New York has a strong public policy against interest rates which exceed 25%, which policy must be enforced."[30]

Delaware usury laws, on the other hand, place no cap on interest.[31] "Delaware usury law provides no cap on interest rates, but instead allows interest to be charged in an amount pursuant to the agreement governing the debt."[32] Thus, as Defendants

---

[28] *EBP Lifestyle Brands Holdings, Inc.*, 2017 WL 3328363, at *7; *Fyfe Co.*, 2016 WL 4662333, at *5; *Kan-Di-Ki, LLC*, WL 4503210, at *17.

[29] Def.s' Resp. at 4 (citing Texas Finance Code, § 302.001 (b); *In re McCorhill Pub., Inc.*, 86 B.R. 783, 793 (S.D.N.Y. 1988); *Murlar Equities Partnership v Jimanez*, 2016 N.Y. Misc. LEXIS 3541, *10-12 (N.Y. Sup. Ct. Sept. 1, 2016)).

[30] *In re McCorhill Pub., Inc.*, 86 B.R. at 793.

[31] 5 *Del. C.* § 943; *Kaneff v. Delaware Title Loans, Inc.*, 587 F.3d 616, 622 (3d Cir. 2009) ("Delaware has no usury law."); *Madden v. Midland Funding, LLC*, 237 F. Supp. 3d 130, 149 (S.D.N.Y. 2017).

[32] *Madden*, 237 F. Supp. 3d at 149.

argue, application of Delaware law to the Agreement would be contrary to both New York and Texas public policy against usurious loans.

This Court recognizes that courts in New York and Texas have upheld usury laws from other states;[33] however, the *Restatement (Second) of Conflicts* § 187(2)(b) exception refers to a law that is "contrary to a fundamental public policy . . . ." For purposes of the analysis in this case, this Court acknowledges that usurious loans are contrary to fundamental public policy in New York and Texas.

In addition to the above two factors, to avoid application of Delaware law pursuant to the choice-of-law clause in the Agreement, Defendants must demonstrate that New York and/or Texas has a materially greater interest than Delaware in the enforcement or non-enforcement of the loan transaction. Defendants have failed to demonstrate that either New York or Texas has a "materially greater interest" in the Agreement than does Delaware. Aside from the argument that New York or Texas would apply as the "default state" absent the choice-of-law clause ascribing Delaware law to the Agreement because Azadian has its principal place of business in New York and the transaction was handled in New York, Defendants make no argument as to this factor of the *Restatement (Second) of Conflicts* § 187(2)(b) exception.

Defendants argue that "[t]he underlying loan transaction has absolutely no connection to Delaware."[34] However, this Court finds that because Azadian is a Delaware LLC and because Azadian and Defendants originally entered into the Agreement, which established Delaware choice of law, the Agreement has a connection to Delaware.

---

[33] *See, e.g., Walter E. Heller & Co. v. Chopp-Wincraft Printing Specialties, Inc.*, 587 F. Supp. 557, 560 (S.D.N.Y. 1982) (holding Illinois choice of law applied instead of New York because usury "is not a favored defense, particularly in the circumstances here where a corporation rather than a helpless consumer is involved"); *Saturn Capital Corp. v. Dorsey*, 2006 WL 1767602, at *8 (Tex. App. June 29, 2006) (holding that "[i]n Texas, there is nothing inherently violative of public policy in contracting for another state's usury laws to apply. . . . However, choice of law provisions . . . may not be used as a subterfuge to avoid the usury law that would otherwise apply.") (internal quotation marks omitted); *see also Bradt v. W. Pub. Co.*, 1991 WL 230182, at *4 (Tex. App. Oct. 31, 1991), *writ denied* (Feb. 12, 1992) ("Texas public policy does not forbid the choice of law of another state to control as to usury questions if there exists a reasonable connection between the contract and such other state.").

[34] Def.s' Resp. at 4.

14

In general, Delaware courts will not "easily" invalidate a contract.[35] It is only when faced with a threat to some fundamental public policy even greater than the freedom to contract will the courts do so.[36] There is an inherent difficulty in avoiding a contract on the argument that it conflicts with public policy:[37]

> Delaware courts are rightly reluctant to accept . . . arguments [that a contract should be invalidated because it conflicts with public policy]. And when they do, it is not because a person has entered into a contract that has become financially inconvenient for them to honor, but because the enforcement of the contract threatens a well-recognized policy interest of concern to our polity in general. That is, this exception [for the avoidance of a contract due to a conflict with public policy] does not exist as a sword for parties to avoid their contracts when avoidance suits their personal interests, but as a shield to protect the community in general when the terms of a contract endanger the public interest.[38]

Delaware courts are "strongly inclined to respect [parties'] agreement . . . ."[39] "When parties have chosen a state's contract law to govern their contract, it is illogical to assume that they wished to have the enforceability of that contract judged by another state's law."[40] Delaware courts regularly express their reluctance to allow avoidance of the contractual choice-of-law provision.

As was well-stated in a 2006 analogous Court of Chancery case: "[t]o enter into a contract under Delaware law and then tell the other contracting party that the contract is unenforceable due to the public policy of another state is neither a position that tugs at the heartstrings of equity nor is it commercially reasonable."[41] That court further observed:

> When a rational businessperson enters into an agreement establishing a transaction or relationship and provides that disputes arising from the agreement shall be governed by the law of an identified jurisdiction, the logical conclusion is that he or she intended that law to apply to all disputes arising out of the transaction or relationship. We seriously doubt that any rational businessperson, attempting to provide by contract for an efficient and businesslike resolution of possible future disputes, would intend that the laws of multiple jurisdictions would apply to a single

---

[35] *Benihana of Tokyo, Inc. v. Benihana, Inc.*, 2005 WL 3753046, at *14 (Del.Ch. Dec. 8, 2005) (citing the "fundamental principle that parties should have the freedom to contract and that their contracts should not easily be invalidated").

[36] *Libeau*, 880 A.2d at 1058 (stating that Delaware courts will "reluctant[ly] [invalidate a contract when] the enforcement of the contract threatens a well-recognized policy interest of concern to our polity in general.").

[37] *Id.*

[38] *Id.*

[39] *Id.* at 1056–57 (Del.Ch.2005).

[40] *Abry Partners V, L.P. v. F & W Acquisition LLC*, 891 A.2d 1032, 1049 (Del. Ch. 2006).

[41] *Id.* at 1050.

controversy having its origin in a single, contract-based relationship. Nor do we believe such a person would reasonably desire a protracted litigation battle concerning only the threshold question of what law was to be applied to which asserted claims or issues. Indeed, the manifest purpose of a choice-of-law clause is precisely to avoid such a battle.[42]

Delaware has a strong presumption in favor of the long-held principle of freedom of contract.[43] This Court will therefore not disrupt the mutually agreed-upon contract terms of the Agreement, including the Delaware choice-of-law provision. Accordingly, Counts One through Four alleging violations of New York and Texas law are dismissed.

    *C.*     *Defendants'*     *Count*     *Five*     *"Negligence*     *and*     *Negligent Misrepresentation" Claim is Dismissed Because the Amended Counterclaim Alleges no Knowledge Against Plaintiff.*

Defendants argue that Plaintiff is liable to the same degree as Azadian because Plaintiff is an assignee with knowledge of the alleged "criminally usurious loan."[44] Defendants argue that

> an "assignee [Plaintiff] takes his claim subject to the equities of third persons against the assigned right where he has knowledge of such equities." [*Papendick*, 1981 LEXIS 675 at *20] In other words, when the assignee purchases assets with full knowledge that a third party has potential claims, the assignee is liable to the same extent as the assignor. The court noted that the assignee's recourse would be to seek indemnification from the assignor.
>
>     Here, the Amended Counterclaim sufficiently alleges that [Plaintiff] knew that the agreement between Azadian and Defendants involved a criminally usurious loan.[45]

As a threshold matter in this analysis, it should be noted that Defendants rely on Delaware case law to argue this claim.[46] At oral argument, when asked by the

---

[42] *Id.* at 1048 n.25 (quoting *Nedlloyd Lines B.V. v. Superior Court,* 3 Cal.4th 459, 469 (1992)).

[43] *Texas Instruments Inc. v. Tandy Corp.*, 1992 WL 200604, at *5 (Del. Ch. Aug. 13, 1992) (recognizing a "powerful presumption in favor of freedom of contract.").

[44] Def.s' Resp. at 12-13 (citing *Papendick*, 1981 Del. Super. LEXIS 675).

[45] *Id.* at 13 (citations omitted).

[46] *Id.* at 12 (citing *Papendick*, 1981 Del. Super. LEXIS 675).

Court, Defendants agreed that "Delaware law applies to Count V" and "New York or Texas [applies] to Counts I, II, III, and IV."[47]

Defendants contend that Plaintiff "knew that the agreement between Azadian and Defendants involved a criminally usurious loan."[48] However, nowhere in the Amended Counterclaim do Defendants assert that Plaintiff had knowledge—much less "full knowledge"[49]—of Defendants' potential claims against Azadian. Defendants only make a conclusory assertion that Plaintiff "is liable as assignee of the Loan Agreement."[50] Defendants also mention that Plaintiff "stands in the shoes of Azadian under the Loan Agreement[,] however this still falls short of pleading a claim that Plaintiff had knowledge sufficient to impute liability by way of Azadian's alleged actions. Thus, Defendants' Count Five claim for "Negligence and Negligent Misrepresentation" is dismissed.[51]

## VI. CONCLUSION

The choice-of-law provision in the Agreement, which designates Delaware law, will apply. As such, Counts One through Four of Defendants' Amended Counterclaim alleging New York and Texas law are dismissed. Further, Count Five of Defendants' Amended Counterclaim is dismissed because Defendants fail to assert that Plaintiff had knowledge of Defendants' potential claims against Azadian. Without more, Defendants have not made a claim against Plaintiff for "Negligence and Negligent Misrepresentation."

Plaintiff's Motion to Dismiss Defendants' Amended Counterclaim is **GRANTED.**

---

[47] Tr. of Oral Arg., November 20, 2017, at 26-27; *see also Catlin Specialty Ins. Co. v. CBL & Assocs. Properties, Inc.*, 2017 WL 4784432, at *5 (Del. Super. Ct. Sept. 20, 2017) (analyzing Delaware choice-of-law rules in the insurance context stating that "it would be impractical to apply the law of multiple states to a claim under one insurance policy covering multiple locations."); *Abry Partners*, 891 A.2d at 1048 n.25 (quoting *Nedlloyd Lines*, 3 Cal. 4th at 469 ("[w]e seriously doubt that any rational businessperson, attempting to provide by contract for an efficient and businesslike resolution of possible future disputes, would intend that the laws of multiple jurisdictions would apply to a single controversy having its origin in a single, contract-based relationship.").

[48] *Id.* at 13.

[49] *Id.*

[50] Def.s' Am. Counterclaim at 20.

[51] This Court need not reach the unraised issue of whether the Superior Court has jurisdiction over Count V, to the extent it alleges a "negligent misrepresentation" claim. *See, e.g., Wypie Investments, LLC, v. Wayne Homschek*, 2018 WL 1581981, at *15 (Del. Super. Ct. Mar. 28, 2018) (quoting *Van Lake v. Sorin CRM USA, Inc.*, 2013 WL 1087583, at *11 (Del. Super. Ct. Feb. 15, 2013) ("It is well-settled Delaware law that the Court of Chancery has exclusive jurisdiction over claims of negligen[t] misrepresentation.").

17

**IT IS SO ORDERED.**

                                          _____
                                          Richard R. Cooch, J.

cc: Prothonotary